No. 10,411.

DROVERS NATIONAL BANK *v.* DENVER LIVE STOCK EXCHANGE, ET AL.

Decided November 5, 1923. Rehearing denied December 3, 1923.

Action for money paid out.   Judgment for defendant.

*Affirmed.*

1.   APPEAL AND ERROR—*Judgment—Presumptions.*   The finding of the trial court being general, all presumptions on review are in favor of the judgment.

2.   EXCHANGES—*Transfer of Membership.*   The transferee of a membership in a live stock exchange, which it took with notice of the rights and reservations of the exchange, obtained nothing more than the interest of its assignor.

3.   EQUITY—*Maxim.*   The maxim, "He who has done iniquity shall not have equity," usually applies only to the particular transaction under consideration by the court.

4.   BANKS AND BANKING—*Deposits.*   A bank has no right to take the deposits of a customer for the payment of his debt to it, where it has knowledge that the money so applied is in fact the property of another.

5.   EQUITY—*Maxim.*   He who comes into a court of equity asking for relief, must come with clean hands.

*Error to the District Court of the City and County of Denver, Hon. Warren A. Haggott, Judge.*

Messrs. LEWIS & GRANT, Mr. ROBERT L. STEARNS, for plaintiff in error.

Mr. L. F. TWITCHELL, Mr. J. H. BURKHARDT, for defendant in error.

*Department One.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties occupy the same relative position as in the trial court. For convenience plaintiff in error is hereinafter referred to as "plaintiff" or "the bank," and defendant in error, The Denver Live Stock Exchange, as "defendant" or "the exchange."

The question before us is the right of defendant to resort to memberships on the exchange to compensate it for its voluntary discharge of certain obligations of former holders, as against the bank to which said memberships had been assigned as collateral.

The Denver Live Stock Exchange is an association so similar to others of the kind throughout the country that particular description and classification are superfluous. Among the objects of its organization and operation, as set forth in its by-laws, were the following: To promote and protect all interests concerned in the purchase and sale of livestock at the Denver Union Stockyards; to enforce high moral principles in the transaction of business; and to inspire confidence in the methods and integrity of its members. The by-laws further provided that members should promptly and faithfully fulfill all business obligations; that a violation of the by-laws or dishonorable or uncommercial conduct should subject the offender to fine, censure, suspension, or expulsion, and the forfeiture of all privileges or property interests pertaining to the exchange or membership therein or resulting therefrom; that certificates of membership could only be transferred after notice and to persons approved by the exchange; and that no

pledge or other transfer of such memberships would be effectual without consent of the board and compliance with any conditions it imposed. The rule concerning transfer and pledge was printed on each certificate, together with a statement that the person accepting the same agreed to all the conditions thereof and the constitution, laws and regulations of the Exchange and all amendments thereto.

The Rodgers Live Stock Commission Company, hereinafter referred to as "the company," was engaged in handling live stock on commission. It was a debtor of plaintiff and banked with it. The four memberships in question belonged to members of the company and were assigned to plaintiff as collateral. The assignment was approved by the following endorsement:

"March 13, 1920.

The above assignment to The Drovers National Bank has this day been approved by the board of directors, with the distinct understanding that it is subject to all rights and claims of the members of this exchange.

(Signed)    F. O. SANDSTROM,
Secretary."

In January, 1921, four customers of the company consigned to it on commission certain shipments of live stock. These shipments were sold and the proceeds deposited in the bank in the name of the company. Said proceeds, or at least $3890.70 thereof, the bank applied to the company's indebtedness to it. For the company's failure to pay this money to its customers the exchange suspended the memberships and itself paid the debts. The bank, claiming the company had defaulted on the indebtedness secured by the memberships, sold the same for $13,000.00, and, on the theory that the suspensions were invalid as against it, demanded a reinstatement of them to effectuate the sale. This was refused by the exchange save upon repayment to it by plaintiff of said sum of $3890.70. This payment was finally arranged under the terms of a written instrument reciting that it was made under protest, involved no waiver by either party of any rights in connec-

tion with the matter, that the bank reserved the right to sue for the recovery of said sum, and that it would do so within thirty days. This action was brought accordingly, was tried to the court without a jury, and to review a judgment therein entered against it, plaintiff prosecutes this writ.

The finding of the trial court was general. All presumptions are in favor of the judgment.

Plaintiff contends that defendant is seeking to enforce against an innocent pledgee a claim, i. e., the company's debt to its customers, which arose subsequent to the pledge and its approval. But defendant stands here upon a right, the right to effectuate the very purpose of its organization, a right which existed at the time of the pledge and was reserved in the approval thereof. Plaintiff took with notice of that right and its reservation. It obtained nothing more than the interest of its assignors. *Shannon v. Cheney,* 156 Cal. 567, 105 Pac. 588.

The claim was but an incident of the enforcement of that right. Such was the misconduct of the company that the exchange was authorized by the express terms of its by-laws to expel the offending members and forfeit their memberships. It requires no argument to demonstrate that if it could take the whole it could take a part.

Furthermore, plaintiff says (though defendant denies) that this is a suit in equity. Accepting that theory, without deciding the question, and adopting that view of the evidence which the trial court was justified in taking and which we must suppose it did take, plaintiff has no standing here.

It is true that the maxim "He who has done iniquity shall not have equity" usually applies only to the particular transaction under consideration by the court. *Kirby v. Union Pacific Co.,* 51 Colo. 509, 524, 119 Pac. 1042, Ann. Cas. 1913B, 461.

We need not notice the numerous and important exceptions to this rule within one or more of which the instant case might properly be brought. 21 C. J. 184.

The "particular transaction" here under consideration is the bank's appropriation of the customer's money to pay the company's debt. The bank claimed the right to retain that money and, being obliged to part with it to obtain the balance of the $13,000.00, it brings this action for its recovery. The sum was illegally taken in the first instance and had the customers sued the bank they could have recovered. *Union Stockyards Nat. Bank v. Moore,* 79 Fed. 705, 25 C. C. A. 150; *Union Stockyards Nat. Bank v. Gillespie,* 137 U. S. 411, 11 Sup. Ct. 118, 34 L. Ed. 724.

The company, in appropriating the money of its customers, plundered the interests, violated the principles and destroyed the confidence whose protection, promotion, and inspiration was the purpose of the organization of the exchange and the duty of its members. All this was with the knowledge and participation of the bank, and it was the beneficiary thereof. It is therefore directly responsible for the customer's loss, for a violation of the by-laws of the exchange, for the suspension of the memberships, and indirectly for the payment by the exchange to the customers of the sum in question. Hence we are compelled to say to plaintiff that if it is in a court of equity it did not come with clean hands.

For the foregoing reasons the judgment is affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR, sitting for MR. JUSTICE ALLEN, concur.