[Civil No. 3643. Filed April 13, 1936.]

[56 Pac. (2d) 665.]

AMERICAN SURETY COMPANY, a Corporation, Appellant, v. ELENA C. DE ESCALADA and W. J. DONALD, Appellees.

Mr. Duane Bird and Mr. Thomas L. Hall, for Appellant.

Messrs. Duffy & Robins, for Appellees.

LOCKWOOD, C. J.—This is an appeal by American Surety Company, a corporation, hereinafter called appellant, from a judgment in favor of Elena C. de Escalada, hereinafter called appellee, which awarded to her certain proceeds of an insurance policy which had been paid into court by the insurer on an interpleader between appellant and appellee. The case was heard by the court on an agreed statement of facts, and the money was awarded to appellee.

The facts necessary for a determination of the appeal, as shown by the agreed statement, may be summarized as follows: On September 6, 1930, one Jose M. Escalada was employed by the Nogales National Bank as a teller. Previous to that date there had been issued to him an insurance policy in the sum of $2,000 by the Missouri State Life Insurance Company, which was in full force and effect at the time of Escalada's death; the beneficiary named in the policy being his mother, appellee herein. On the day first above mentioned, Escalada was in serious financial straits; he was indebted in the sum of $413 to various creditors who, to the knowledge of the bank, were hounding him for their money. At the same time, but unknown to the bank or any officer thereof, he had embezzled some $400 of the bank's money. Desiring to quiet his creditors, he borrowed the sum of $413 from the bank, promising that he would pay

the loan to them in monthly installments and that he would keep out of debt in the future. He also assigned to the bank all his right, title and interest in the policy. The stipulation of facts then recites:

" . . . That said assignment was given by said Jose M. Escalada as security, the bank intending that it should cover any and all indebtedness either then existing or thereafter to accrue from said Escalada to it, but nothing being discussed between the officers of the bank and said Jose M. Escalada at the time of the making of said assignment other than that said Escalada was securing sufficient funds to pay off his said indebtedness, would make the bank his only creditor, would keep him from incurring debts in the future and would liquidate said specific loan of $413.00 in monthly installments."

Thereafter he repaid all of the said loan of $413 to the bank, with the exception of $155.50, but during the time he made such repayment he embezzled from the funds of the bank the further sum of $994.79. He died on December 16, 1931. He had been bonded by appellant herein, and, when either shortly before or after his death the embezzlement as aforesaid was discovered, appellant, as required by its bond, paid to the bank the amount which it was shown had been embezzled both before and after the assignment of the policy, being $1,394.79, and agreed with it that the latter should assign to the appellant all of the bank's interest in the insurance policy which had been assigned by Escalada under the circumstances above set forth. No formal assignment, however, was executed, for the reason that the bank shortly thereafter went into liquidation. Under these circumstances, the insurance company filed a bill in interpleader, asking that it be permitted to pay the proceeds of the insurance policy into court, and that the appellant and appellee be required to litigate

their respective claims among themselves. This was done, and the court found that the beneficiary, appellee herein, was entitled to all of the proceeds of the policy, with the exception of the $155.50 remaining unpaid on the loan made to Escalada by the bank, as aforesaid.

The question before us is whether appellant was entitled to be reimbursed from the proceeds of the policy for the $1,394.79 embezzled by Escalada and paid by it to the bank. It is urged by appellant (a) that it stands in the shoes of the bank, having the same rights as against the proceeds of the insurance policy that the bank would have had if Escalada had not been bonded and the bank itself had lost the amount embezzled; and (b) that, under those circumstances and the facts as aforesaid, the bank would have been entitled either to the whole of the proceeds of the insurance policy, or at least to complete indemnity, not only for the $413 loaned by it, but for the $1,394.79 which had been embezzled by Escalada without its knowledge, partly before and partly after the assignment of the policy.

So far as proposition (a) is concerned, there can be no doubt as to its correctness. We have held in *Mosher* v. *Conway*, 45 Ariz. 463, 46 Pac. (2d) 110, 114, that, when one is subrogated to the rights of another,

"Upon the general principles of equity he should have every right to enforce his claim which the original party had, but upon the same principles he is not entitled to any new or additional rights. He merely steps into the shoes of the person to whose rights he is subrogated so far as a remedy is concerned."

Appellant therefore had every right as against the proceeds of the insurance policy that the bank would have had if it had not been reimbursed by appellant

for the embezzlement, as aforesaid, and no more. What rights did the bank have?

 It is the general rule of law that, where one is indebted to a banking institution which also has in its possession assets of the debtor, the latter may apply these assets to the payment of a matured debt or, in case of insolvency of the debtor, to an unmatured one. *United Bank & Trust Co.* v. *Washburn & Condon,* 37 Ariz. 223, 292 Pac. 1025. To this rule, however, there is an exception, recognized by most of the courts, which may be stated as follows:

"There is no doubt that under ordinary circumstances a bank has the right to apply the deposit of an insolvent debtor towards the payment of its claims against him. *Wiley* v. *Bunker Hill Nat. Bank,* 183 Mass. 495, 497, 67 N. E. 655; *Clark* v. *Northampton Nat. Bank,* 160 Mass. 26, 35 N. E. 108; *Wood* v. *Boylston Nat. Bank,* 129 Mass. 358, 359, 360, 37 Am. Rep. 366; *Demmon* v. *Boylston Bank,* 5 Cush. 194. This right of detention, or banker's lien, as it is sometimes called, attaches upon the securities and money of the customer deposited in the usual course of business for advances which are supposed to have been made upon their credit. *Central National Bank* v. *Insurance Co.,* 104 U. S. 54, 71, 26 L. Ed. 693. But the right to detain for the general balance of account may be controlled by any special agreement which shows that it was not intended by the parties, nor does it exist where the circumstances or the particular modes of dealing are inconsistent with its existence. *Neponset Bank* v. *Leland,* 5 Metc. 259; *Reynes* v. *Dumont,* 130 U. S. 354, 391, 9 Sup. Ct. 486, 32 L. Ed. 934. Securities pledged to the bank to secure a specified demand cannot be held for other demands though against the same debtor. *Hathaway* v. *Fall River Nat. Bank,* 131 Mass. 14; *Brown* v. *New Bedford Institution for Savings,* 137 Mass. 262. Accordingly the right of a bank to apply the deposit of its debtor to the payment of his matured indebtedness has been denied if that indebtedness is fully protected by other collateral security. *McKean* v. *German-American*

*Savings Bank,* 118 Cal. 334, 340, 50 Pac. 656; *Farmers' Nat. Bank* v. *McFerran,* 11 Ky. Law Rep. 183; Bolles, Modern Law of Banking, 749; Zane, Banks and Banking (4th ed.), 230, 231. And see the cases there cited. In our opinion, this is the proper rule." *Furber* v. *Dane,* 203 Mass. 108, 89 N. E. 227, 230.

██ The question before us then is, Under the stipulation of facts, was it understood and agreed between Escalada and the bank that the assignment should cover merely indebtedness arising in the ordinary course of business which was known to both parties at the time it arose (such as the $413 above referred to), or was it understood and contemplated by both parties that it should also apply to an indebtedness which arose without the knowledge of the latter and undoubtedly against its will? We are of the opinion that, judging by the actions and reactions of the ordinary man under the circumstances as set forth in the statement of facts, the officers of the bank certainly had in mind only indebtedness arising in the ordinary course of business, for, had they known of the prior embezzlement of $400 or suspected the possibility of the subsequent embezzlement of $994.79, there is no doubt in our minds that the procedure adopted by them would have differed vastly from that which actually was followed. Escalada would in all probability have been in jail immediately upon the discovery of the past embezzlement, and certainly would not have been left in a position where he could embezzle other funds. The very fact that he retained his position as teller after the assignment convinces us that it never occurred to any officer of the bank that he had embezzled any money, and certainly not that he would embezzle more.

It is suggested that Escalada knew that he had embezzled the $400, had repented thereof, and, in his contrition, desired secretly to secure the bank for

such embezzlement. Such a change of heart, of course, does occur at times, but it is hardly consistent with the fact that he not only made no effort to replace the converted money, but increased it some $900.

We are satisfied that, upon the statement of facts, the only conclusion that the trial court could properly have reached and which, from its judgment, it evidently did reach, was that the only indebtedness which both the bank and Escalada contemplated should be secured by the assignment of the policy in question was the voluntary loan of $413 and any other of a similar nature which might perhaps be made at a later date, and that there was no intention nor agreement that it should cover any embezzled money, past or future. Such being the case, under the rule in *Furber* v. *Dane, supra,* the bank was not entitled to apply the security which had been pledged to it for a specific type of indebtedness to an indebtedness of another and entirely different character and at the death of Escalada the rights of the beneficiary of the policy attached to its proceeds.

We are of the opinion that, under the law as applied to the facts stipulated and those necessarily found by the trial court in order to sustain its judgment, that judgment was correct, and it is affirmed.

McALISTER and ROSS, JJ., concur.