No. 16,239.

SHERBERG v. FIRST NATIONAL BANK OF ENGLEWOOD.
(222 P. [2d] 782)

Decided September 18, 1950. Rehearing denied October 9, 1950.

Messrs. SHUTERAN, ROBINSON & HARRINGTON, Mr. RICHARD L. BANTA, JR., for plaintiff in error.

Messrs. LEE & SHIVERS, for defendant in error.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

THIS is an action brought by Sherberg against the bank to recover damages allegedly occasioned by setting off against the deposit of the Ray Essert Industries, Inc., a corporation, a debt due the bank from Ray Essert individually, which deposit was made with funds furnished by Sherberg for the specific purpose of completing the construction of his home. The trial court's judgment of dismissal of the action is here for review.

The facts are that on or about July 1, 1947, Sherberg, plaintiff in error, entered into a contract with the Ray Essert Industries, Inc., a corporation, and Ray Essert individually, for the construction of a dwelling house. There was paid on account of said contract prior to September 4, 1947, the sum of $8,000. When Sherberg's

available funds were about exhausted, and upon the suggestion and with the assistance of Ray Essert, he applied to defendant in error bank for a loan, which was consummated September 22, 1947. A cashier's check for $15,000 was issued by the bank to Sherberg, endorsed by him, and delivered to Essert. The proceeds of the loan were thereupon deposited in the Ray Essert Industries, Inc., account. The bank's daily ledger on the above date shows the deposit of the above amount with a pencil notation, "Hold—10,000.*00.*" While it clearly appears that the bank's president, Mr. Smoot, personally handled the entire loan transaction, he was nevertheless unable to explain in the trial court the pencil notation, identify its author, or fix the date upon which it was made. However, two days after the deposit was made and upon September 24, 1947, the bank set off against said account, without the knowledge or consent of either Sherberg or Essert, the sum of $10,000, plus interest, and applied same to the payment of Essert's personal unsecured note of the same amount, dated July 12, 1947, and due October 10, 1947. It further appears that during the negotiation for the loan the bank and its president were fully advised, as is admitted, that the purpose of the loan was to complete the financing of the Sherberg home.

Upon discovery of said setoff, approximately two week later, Sherberg immediately protested to the president of the bank, and was thereupon advised as Smoot testified, "We explained to Dr. Sherberg that we had been advised by the bank examiners that we had an excessive loan in the bank and consequently we were forced to make that charge to Mr. Essert's [meaning the Ray Essert Industries, Inc.] account."

At the time the loan was made the bank's president, knowing Essert's strained financial condition, his excessive loans at the bank, and the criticism thereof by the bank examiners, failed to inform Sherberg thereof, and remained silent with respect thereto until after the de-

posit was made and the setoff completed. It seems reasonable to assume in passing that if Sherberg had known the true facts he would not have endorsed the check to Essert or permitted it to be deposited in the account of the Ray Essert Industries, Inc., but instead would have kept the proceeds of the loan in his own account and checked against it as the construction of his home progressed. He was interested, as the bank well knew, in building a home, and not in paying Essert's debts.

It is argued by the bank's counsel that because there was no privity of contract, or relationship of creditor and debtor subsisting between Sherberg and the bank, the bank owed no duty to Sherberg and that this action cannot be maintained. We are not impressed with the above argument under the circumstances here presented. Under the following authorities, when a bank knowingly accepts a deposit for a specific purpose, it cannot thereafter divert the same for its own benefit or otherwise act to defeat the purpose for which the deposit was made.

The right of one for whose benefit a deposit is made to maintain an action against the bank for the wrongful diversion thereof is recognized in *Boettcher v. Colorado National Bank,* 15 Colo. 16, 24 Pac. 582. In that case plaintiff in error Boettcher held certain checks issued by Shackleton & Brinker, a copartnership, in payment for wheat purchased from Boettcher, and which was to be paid for from the proceeds of the sale of flour. Shackleton & Brinker maintained a general checking account in the Colorado National Bank. Instead of paying the checks as they were presented, the bank applied the amount on deposit upon a note due the bank. We held, under the circumstances there present, that Boettcher could not recover and in so doing stated the rule applicable here: "Admitting the course of business between appellant and Shackleton & Brinker to have been as stated, and appellant by the course of trade or by an agreement equitably entitled to the proceeds of the

wheat for its payment, *such fact could not affect appellee unless it was a party to such contract, or at least had knowledge of it.* Appellee could only be made liable in equity, as trustee, by the allegation and proof of a contract creating a trust to which it was a party, or which, after due notice of its trusteeship, it failed to repudiate. * * * The deposit by Shackleton and Brinker was a general deposit to their credit. To constitute it a trust fund for the purpose indicated, it should, either *by express agreement or by circumstances indicative of an intent to make it such,* have been given the character of a special deposit." (Italics supplied)

 The situation here is quite comparable to that involved in *Drovers National Bank v. Denver Live Stock Exchange,* 74 Colo. 212, 220 Pac. 402, where we held, as set out in paragraph 4 of the syllabus: "A bank has no right to take the deposits of a customer for the payment of his debt to it, where it has knowledge that the money so applied is in fact the property of another."

 It is quite generally held in other jurisdictions that there is no particular formula prescribed for a contract involved in making a special deposit in a bank or a deposit for a specific purpose, and the nature thereof is determined by the mutual intent and understanding of the parties thereto. Also, when a bank knowingly accepts a deposit of money, as here, for a specific purpose, it thereby impliedly binds itself not to set off against such deposit a debt due it from the depositor. 7 Am. Jur., §418, p. 292, et seq; *Engleman v. Bank of America* (Calif.), 219 P. (2d) 868.

In the instant case, as hereinbefore stated, the bank, although not a party to the building contract between the depositor, the Ray Essert Industries, Inc., and Sherberg, through its officers, knew that the latter's funds were exhausted, and by reason thereof loaned him money to enable him to complete his home. It also knew of the arrangements to place the proceeds of the loan in the Ray Essert Industries account so as to facilitate the

payment of labor and material bills and the completion of the construction of said home.

■ The correct rule with respect to the right of set-offs by banks is well stated in the recent case of *American Surety Co. v. de Escalada*, 47 Ariz. 457, 56 P. (2d) 665. We quote from paragraph 2 of the syllabus: "Generally, where bank has in its possession assets of debtor, bank may apply these assets to payment of a matured debt or, in case of insolvency of debtor, to an unmatured one, but such right may be controlled by any special agreement which shows a different intent or where circumstances or particular modes of dealing are inconsistent with such right."

In 9 C.J.S., page 615, section 296, is the following statement: "The more generally accepted view is that such right grows out of the debtor and creditor relation subsisting between bank and depositor, and finds its basis in the right of set-off, and in the application of equitable principles. The right of set-off ordinarily applies to a general deposit and continues while the relationship between bank and depositor is that of debtor and creditor in respect of his deposit, although it has been said that the rule is effective only where the transaction between bank and customer constitutes a deposit, creating the relation of banker and depositor as between the bank and its debtor, and as shown in §§303 and 304 infra, in the case of a special deposit, as where money is deposited for a special purpose, the bank is ordinarily precluded from exercising the right of set-off."

Counsel for the bank, in effect at least, concede that the action of the bank in making the setoff was wrongful, when they state in their brief that, "It would have been probable that had the bank been requested by Sherberg to make such reinstatement into Essert's corporate account, that the bank would have readily done so," and in their answer brief on petition for rehearing counsel say: "The bank could not refuse to do something it had not been asked to do. It will be recalled

that *the bank offered to reinstate the funds* to the corporate account when Essert and his attorney appeared in protest."

The fact that Essert, some time after the setoff attempted to ratify the wrongful act of the bank in setting off against the deposit of the corporation the debt of an individual stockholder, cannot relieve the bank. It was its duty to restore the funds wrongfully taken from the corporate account when the protest of Sherberg was made. The following excerpt from *Drovers National Bank v. Denver Live Stock Exchange, supra,* is pertinent here. "The sum was illegally taken in the first instance and had the customers sued the bank they could have recovered. * * *

"The company [commission], in appropriating the money of its customers, plundered the interests, violated the principles and destroyed the confidence whose protection, promotion, and inspiration was the purpose of the organization of the exchange and the duty of its members. All this was with the knowledge and participation of the bank, and it was the beneficiary thereof. It is, therefore, directly responsible for the customer's loss, for the violation of the by-laws of the exchange, for the suspension of the memberships, and indirectly for the payment by the exchange to the customers of the sum in question. Hence we are compelled to say to plaintiff that if it is in a court of equity it did not come with clean hands."

Other authorities in conformity with the conclusions herein reached are: *Cassedy v. Johnstown Bank,* 286 N.Y.S. 202, 246 App. Div. 337; *Peoples State Bank v. Caterpillar Tractor Co.,* 213 Ind. 235, 12 N.E. (2d) 123; *Witherow v. Weaver,* 337 Pa. 488, 12 A. (2d) 92; *Sherts v. Fulton Nat. Bank of Lancaster,* 342 Pa. 337, 21 A. (2nd) 18.

The judgment of the trial court is reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

Mr. Justice Jackson and Mr. Justice Stone dissent.

Mr. Justice Stone dissenting.

I dissent. The essential facts involved, I think, are these: Sherberg contracted with Essert for the construction of two dwelling houses on his land. At the suggestion of Essert, Sherberg applied for a $15,000 loan from defendant bank, where Essert did business, to complete the construction of one of the houses. Sherberg contacted Smoot, the president of defendant bank, told him that Essert was his contractor and had a house under construction and wanted a loan, as he testified, for the purpose of making future payments to be applied on the indebtedness that would be incurred therein, but nothing was said as to the agreement. On September 22, 1947, Essert and Sherberg went to the bank together when the loan was closed. Smoot handed a cashier's check for the amount of the loan to Sherberg and Sherberg handed it to Essert saying, "This should be enough money to pretty nearly complete the house, shouldn't it?" and Essert answered, "That will bring it pretty close." Then the two men left the bank together. On their way out Essert stopped in the lobby and, to the knowledge of Sherberg, deposited the check in the bank in his general account, which included moneys received from other operations as well as from Sherberg. The bank promptly applied $10,000 of the amount so deposited to payment of a note of Essert's which it held. When Essert learned of the application, he at first objected and the bank offered to retransfer the money, but he then withdrew his objection and consented to its application to partial payment of his indebtedness. A few weeks later Sherberg learned of the application of the money to payment of Essert's note and made inquiry of the bank president regarding it, but made no demand for the money or for its restoration to Essert's account then or at any other time; on the contrary, on November 3, 1947, he paid off this note in full and told Mr. Smoot

that, "I was going to try to work things out with Essert so I wouldn't have to take the whole thing to an attorney." Smoot offered to make him another loan if he wished and, after two days' consideration, Sherberg went back to the bank where Mr. Smoot, as he had promised, let him have $10,000 on his unsecured note, "because there was ten thousand short that had been offset." Sherberg testified that he told him that it was to be put on construction, and said, "this time you are not going to get your hands on it. I am going to pay these items, myself." In the brief of counsel for plaintiff in error, much is said as to the fact that Essert deposited the money to the account of his personally-owned corporation, while the money was applied to payment of his individual note. It seems hardly necessary to say that Essert is the only person who could raise objection to the application on that ground, even had that matter been included in the specification of points, which it was not.

Among the numerous reasons why I cannot concur in the majority opinion are the following:

First: The main premise of the opinion is that Sherberg was deceived by the bank by reason of its failure to inform him of Essert's indebtedness to it, and that thereby he was induced to permit the fifteen thousand dollar check to be desposited in Essert's account. Outside the fact that this conclusion was a mere surmise without any basis of evidence whatever, it in effect holds a banker to an obligation violative of the fundamental principles of ethical banking by making it his duty to inform a borrower at the bank of the financial condition of one of its depositors of which it has acquired knowledge through its banking operations.

Second: If I understand the import of the opinion, it is that the deposit of the $15,000 treasurer's check constituted a trust fund and therefore was in the nature of a deposit for a special purpose, and was not a general deposit. As to that holding I would briefly note:

(a) That the money was, with the knowledge and consent of Sherberg, deposited in Essert's general account. "Money deposited with a bank for a particular purpose, but, with the depositor's consent, commingled with other funds is a general deposit." 5 Michie, Banks and Banking, permanent edition, p. 643, §335. "In the absence of an agreement and proof to the contrary, a deposit is presumed to be general rather than special." 7 Am. Jur., p. 294, §419. "A fiduciary may, as a general rule, deposit trust funds in a bank as a general deposit, and the fact that funds so deposited are trust funds does not itself make the deposit a special one, even though the bank knows the character of the funds deposited." 7 Am. Jur., p. 295, §421.

(b) In any event, to establish such a trust or special deposit, a definite and specific trust agreement must be clearly established to which either the bank is a party or the trusteeship of which it has accepted. As said in *Boettcher v. Colorado Nat. Bank,* 15 Colo. 16, 24 Pac. 582, cited in the majority opinion, "Appellee could only be made liable in equity, as trustee, by *the allegation and proof of a contract* creating a trust to which it was a party, or which, after due notice of its trusteeship, it failed to repudiate. * * * A deposit is not special unless made so by *agreement or directions* of the depositor, or by such circumstances as being inclosed in a box, or other matter indicative of intent not to make a general deposit, or unless made in a particular capacity which indicates such intent." As said in *American Surety Co. v. Bank of Italy,* 63 Calif. App. 149, 218 Pac. 466: "A banker is not required to go 'snooping' about to learn from what source his depositors obtain the moneys which they deposit in his bank. His duties as a depositary of moneys are fulfilled if he keeps and handles the moneys deposited with him according to the requirements of the depositor or the conditions upon which the deposit is made, and these requirements or conditions, if they impose something beyond his usual or ordinary

obligations in the matter of the handling of deposits of money, must be brought home to him *by instructions by the depositor or an agreement between him and the depositor so clear or so unambiguous and unequivocal as to leave no room for a reasonable doubt as to their meaning and scope."* Here, there was no announced specific or particular purpose, but only a most vague and indefinite one. There was not even a statement that the proceeds of this check were to be used for the payment of bills incurred or to be incurred in connection with the building of either of the houses for the building of which Essert had contracted. The sole evidence as to any agreement was plaintiff's own testimony that he said to Essert, "this is for the finishing of the construction on the house." The bank knew nothing about the actual contract between Essert and Sherberg, as the testimony conclusively discloses, and the trial court knew nothing about it, as for some reason Sherberg's counsel objected to its being admitted in evidence. Whether under that agreement Sherberg was obligated to pay Essert a specified sum plus extras, and Essert to assume obligation for all bills, or whether by means of the loan Essert was to make payment of bills as agent for Sherberg, the bank did not know and we do not know.

In *Andrew v. Waterville Sav. Bank,* 205 Ia. 888, 219 N.W. 53, one in the business of buying and selling livestock, in a general course of business shipped stock in the name of his bank which, at his direction, drew on the consignee and credited his deposit with the amount of the draft. The bank knew that the particular purpose in the mind of the shipper was to protect his outstanding checks for purchases of stock, yet this was held to be a general and not a special account, since it was customarily used for other purposes, as well as for payment of stock purchased. So, in the situation before us, the deposit was in Essert's general account, with Sherberg's approval, and there was no suggestion that the account was to be used only for payment of bills in connection

with the construction of one of Sherberg's houses. In *Gray v. Elliott,* 36 Wyo. 361, 255 Pac. 593, it was held that the fact that the bank knew that a note left with it for collection by an administrator belonged to him in his capacity as such did not make the bank a trustee of the proceeds or constitute the fund a special deposit. The court said, "The mere fact that a depositor makes a deposit in a fiduciary rather than individual capacity, does not make the deposit a special one. 3 R.C.L. 518. The question is not what relation he or his fund bears to some third party [in this case Sherberg], but rather whether a trust relation has been created between the bank and the depositor in connection with the fund." Further, a valid trust requires designation of the beneficiaries and of their interests. Here, neither the bank nor the court had any knowledge either of the beneficiaries or the amounts severally due them, nor was any way shown by which either could have been safely ascertained by the bank.

(c) Even though a bank has knowledge of intent that a deposit shall be for a special purpose, yet where a general deposit of money is in fact made, the bank cannot be held to the obligation of a deposit for a special purpose in the absence of agreement by the bank so to accept it or of holding it under circumstances to imply such an agreement. "And it has been held that a bank may apply a special deposit to another purpose where it accepted the deposit with knowledge of the special purpose but without agreement so to apply it." 9 C.J.S., p. 630, §303; *Boettcher v. Colorado Nat. Bank, supra,* as hereinbefore quoted. In the case before us there was no agreement whatever with the bank, even as to deposit of the money there. As Essert left the bank, he stopped and, in the presence of Sherberg and with his approval, deposited the money in his general account where he kept other funds, and there is nothing disclosed by the record to indicate any knowledge of Smoot that it was

to be deposited in his bank much less of any intent that the deposit was to be for a special purpose.

(d) Deposit having been made by Essert with the consent of Sherberg, plainly the bank was answerable to Essert for the funds; he consented to the application of part of the money to pay his note at the bank, and he is not even made a party to this action. If Essert failed to carry out the purpose for which the money was paid to him by Sherberg and violated any agreement when he consented to the use of that money for payment of his own note, then Sherberg's proper action, it would seem, was primarily against him and not against the bank. There was, I think, no privity between Sherberg and the bank.

(e) It is clear that the bank rightfully came into possession of the money. Such being the case, someone entitled to it must make demand by check or otherwise before the holding by the bank became wrongful. Essert made no demand; he consented to the bank's use of the money. No materialman or laborer made demand by presenting a check against the fund, *and Sherberg himself never made demand upon the bank.* On the contrary, when he learned that part of the money had been used to pay Essert's note, he voluntarily made other arrangements with the bank for obtaining the money he needed, instead of asking them to replace the money which had been applied on Essert's note.

Third: Even assuming that Sherberg might have had a claim against the bank by virtue of its application of the money other than to payment of bills incurred in the construction of the house, Sherberg waived that claim when with full knowledge of the application of the money, he paid his note in full; told the banker he was going to try to work things out with Essert, and accepted the proposal of the bank to make him a loan for a like amount to that which had been set off by his unsecured note to enable him so to work it out.

The majority opinion is certainly a boon to home

builders. Hereafter, there need be no worry about lienable claims; all that is necessary is to pay the contractor in full and tell the bank with which he does business that the money paid him is for building a house, and the whole responsibility then devolves upon the bank.

MR. JUSTICE JACKSON concurs in this dissenting opinion.