**SPENCER COMPANIES, INC., Plaintiff,**

v.

**CHASE MANHATTAN BANK, N.A. and Chase National Corporate Services, Inc., Defendants.**

Civ. No. 87–0911–C.

United States District Court,
D. Massachusetts.

Dec. 1, 1987.

Paul D. Moore, Toni G. Wolfman, Foley Hoag & Eliot, Boston, Mass., for plaintiff.

Robert M. Buchanan, Choate, Hall & Stewart, Boston, Mass., Andrew J. Connick, Barry G. Radick, Nader M. Tavakoli, Milbank, Tweed, Hadley and McCoy, New York City, for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

This action is before the Court on the defendants' motion for dismissal of Counts II, III, IV, VI, VII and VIII of the plaintiff's complaint. In addition, the defendants have moved for dismissal of Count IX, or in the alternative, summary judgment.

*Factual Background*

Plaintiff, Spencer Companies, Inc. ("Spencer"), is a Massachusetts corporation involved primarily in the footwear business. The defendants are Chase Manhattan Bank, N.A., ("Chase Bank") a national banking association having its principal place of business in New York, and Chase National Corporate Services, Inc., ("Chase Services"), a New York corporation affiliated with Chase Bank which maintains a

regional office in Boston, Massachusetts.[1] In 1983, Chase Bank became the primary lender for Spencer. Pursuant to the credit relationship established, Spencer executed two promissory notes dated June 1, 1983 and January 22, 1985. Each note was expressly governed by New York law.[2] Spencer also opened two checking accounts with Chase Bank, one of which was entitled "Expense Account" and was used for payment of Spencer's general operating expenses. The other account was used primarily for inventory and salary purposes and has been labeled the "General Account" by Spencer.

The lending arrangement between Spencer and Chase ran smoothly until the spring of 1986 when Chase informed Spencer that it wished to terminate their banking relationship. At that time, Spencer owed $3.2 million under the promissory notes. After receiving notice that Chase wished to withdraw as Spencer's primary lender, Spencer sought alternative financing with another lender. Throughout the summer of 1986, Spencer and Chase participated in discussions and negotiations with several lenders and a venture capital firm concerning the refinancing of Spencer's business. During this period, Chase took several actions to better protect itself in its position as Spencer's primary lender. In addition, at the end of October, 1986, Chase announced that it would no longer continue its previous policy of allowing Spencer to draw checks against uncollected funds. Chase informed Spencer that no deposits would be available until six days after deposit. As a result of this new policy, several checks issued by Spencer were dishonored.

On November 4, 1986, Chase set off the balance of Spencer's General Account against the $3.2 million debt owed Chase by Spencer. Either after the set off or immediately before, Chase sent a letter to Spencer's offices in Boston demanding payment of the promissory notes. Eight days later, Chase set off the funds held in Spencer's Expense Account against the amounts remaining to be paid under the notes. As a result of the loss of the funds in both the General and Expense Accounts, Spencer was forced to file for bankruptcy.

## COUNT II—WRONGFUL SETOFFS

### A. The General Account

In Count II, Spencer's complaint alleges that Chase failed to make a demand or alternatively, failed to give Spencer an opportunity to respond to its demand for payment before it set off the General Account. In addition, Spencer alleges that Chase built up the balance in the account prior to the setoff by wrongfully dishonoring checks drawn thereon and by accepting deposits to the account with the intent to hold them solely for the benefit of Chase. Spencer asserts that these facts, which must be accepted as true for the purpose of this motion, establish that Chase wrongfully set off the General Account.

■ It is well settled that a bank may apply the balance in its depositor's account to satisfy a debt the depositor owes the bank. *Forastiere v. Springfield Institution for Savings*, 303 Mass. 101, 103, 20 N.E.2d 950 (1939). Three requirements must be met in order for a bank to validly exercise its right to setoff. First, the use of the funds deposited in the account must be unrestricted. Second, mutual obligations must exist between the bank and the depositor. Third, the debt which the bank seeks to setoff must be due and payable. Norton & Whitley, *Banking Law Manual* § 11.05[2] (1987). In the present case, there is no question but that use of the funds in the General Account was not subject to any restrictions and that mutual obligations existed between Chase and Spencer. Therefore, the question of whether or not Chase's setoff of Spencer's account was wrongful depends on whether the $3.2 million which Spencer owed Chase was properly due and payable at the time of the setoff.

---

**1.** The defendants are collectively referred to as "Chase" unless otherwise noted herein.

**2.** Although the plaintiff asserts that Massachusetts law is applicable to its tort claims, the parties generally concede that no important difference exists between the laws of New York and Massachusetts on most of the issues raised by the complaint.

Generally, demand notes are considered due and payable immediately upon their execution with or without a prior demand. *See* M.G.L. c. 106, § 3–122(1)(b); N.Y. Uniform Commercial Code § 3–122(1)(b) (McKinney 1964). *See also Federal Deposit Insurance Corp. v. First Mortgage Investors*, 485 F.Supp. 445, 455 (E.D.Wisc. 1980); *Allied Sheet Metal Fabricators v. Peoples National Bank of Washington*, 10 Wash.App. 530, 518 P.2d 734, 738 (1974); *Bielanski v. Westfield Savings Bank*, 313 Mass. 577, 580, 48 N.E.2d 627 (1943); *In re Dimon's Estate*, 32 N.Y.S.2d 239, 243 (Surrogate's Court 1941). Because a demand note is considered a mature obligation, a bank's setoff of its depositor's account to satisfy a demand note has been held proper even where the lender failed to make a formal demand for payment. *FDIC v. First Mortgage Investors*, 485 F.Supp. at 455, *Allied Sheet Metal Fabricators v. Peoples National Bank of Washington*, 518 P.2d at 739.

■ Although a formal demand is not required to mature an obligation evidenced by a demand note, the parties to a lending arrangement can agree that a note will become due and payable only after a formal demand is made. Moreover, the mere fact that the parties choose to label the instruments which evidence their obligations as demand notes does not automatically mean that no prior demand is required. Where the terms and conditions of a so-called demand note indicate that the parties intended the obligation to become due and payable upon the happening of a future event, the debt is not mature upon execution of the note. The obligation matures only when the agreed-upon event occurs. *Kersten v. Continental Bank*, 129 Ariz. 44, 628 P.2d 592, 598 (1981); *Peterson v. Valley National Bank of Phoenix*, 102 Ariz. 434, 432 P.2d 446 (1967). Until then, a bank may not set off its depositor's account to satisfy the debt. *Kersten v. Continental Bank*, 628 P.2d at 598.

■ In the present case, the promissory notes at issue are denominated demand notes. However, closer inspection of the terms and conditions indicate that the parties did not intend the debts to become due and payable immediately upon execution. The note dated June 1983 provides that one interest rate shall apply from the date of execution until the date the principal amount becomes due. The note also provides that a higher interest rate shall apply to any amount of principal which is not paid when due. These provisions indicate that Spencer and Chase did not intend the debts to mature until some point after the execution of the note. While the June 1983 note does not specify when the principal would become due, it is a compelling conclusion, and I so find, that a demand for payment was required.[3]

With respect to the January 1985 note, the terms of the agreement indicate that the parties also intended this debt to mature upon the happening of a future event, rather than at the execution of the note. The January 1985 note lists various events which would render the note due and payable. Like the 1983 note, the 1985 note contains no specific term stating that a demand is required prior to maturity. However, the listing of the various contingencies which would render the note due and payable would be illogical and unnecessary if the parties intended that the note would be due and payable from its execution. *See Reid v. Key Bank of Southern Maine, Inc.*, 821 F.2d 9, 14 (1st Cir.1987). I find that the logical construction of this note is that, in the absence of the occurrence of one of the contingencies listed, demand for its payment was required before it became due and payable.

Spencer has alleged that Chase failed to demand payment prior to setting off Spencer's General Account. For the purposes of a motion to dismiss, this allegation must be accepted as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed. 2d 90 (1979). If proved, the failure to make a prior demand would mean that

---

**3.** The complaint alleges that Chase did in fact send a demand letter to Spencer after or immediately prior to the setoff. It is not unreason- able to infer from these facts that Chase itself felt bound to make a demand.

Chase set off Spencer's General Account against an unmatured indebtedness, a fact sufficient to make the setoff wrongful. *Harding v. Broadway National Bank,* 294 Mass. 13, 18, 200 N.E. 386 (1936).

■ Although I agree with Spencer that a demand for payment was a prerequisite to a proper setoff in this case, I disagree with Spencer's contention that the good faith obligations imposed by the U.C.C. prohibited Chase from acting in an arbitrary and capricious manner in requiring payment of the notes. The holder of a demand note does not need a good faith reason or any reason at all to demand payment. Demand instruments are specifically exempted from the good faith obligation applicable to acceleration clauses under U.C.C. § 1–208. As the Comment to that section states:

> Obviously, this section has no application to demand instruments or obligations whose very nature permit call at any time with or without reason.

■ The cases cited by Spencer do not persuade me that Chase's right to demand repayment was limited by a good faith obligation. To the contrary, in *Reid v. Key Bank of Southern Maine, Inc.,* 821 F.2d at 13, the court acknowledged that a demand note could be called for any reason. However, although the instrument under consideration in *Reid* was nominally entitled a demand note, it listed certain contingencies which would render the note payable on demand. As a result, the court found that the lender did not have unfettered discretion to demand payment at any time, but could only demand payment after the occurrence of one of the listed contingencies. Unlike the *Reid* note, the notes in the present case list no conditions which modify or qualify the demand term of the note.

Neither is *K.M.C. Co. v. Irving Trust Co.,* 757 F.2d 752 (6th Cir.1985) persuasive authority for imposing a good faith obligation on Chase's right to demand repayment whenever it chose to do so. In *K.M.C.,* the court noted that the obligation of good faith governed a lender's right to demand repayment of a debt evidenced by a demand instrument. *Id.* at 760. The court premised its statement on U.C.C. § 1–208 which imposes a good faith obligation on a lender's exercise of an option to accelerate a debt at will. The court apparently overlooked the Comment to that section, quoted above, which excuses the holder of demand instruments from the obligations imposed by § 1–208. For this reason, I do not accept *K.M.C.* as a correct statement of New York law.

In sum, Chase's right to demand repayment of its loans to Spencer was not limited by an obligation to act in good faith. Because Chase did not need a good reason, or any reason at all to call in the notes, Spencer's allegation that Chase demanded payment and set off the General Account to gain a preference over other creditors is without significance.

Neither do the remaining allegations contribute to Spencer's claim for wrongful setoff of the General Account. The allegation that Chase wrongfully dishonored checks in order to build up the General Account prior to setoff is relevant to Spencer's claim for wrongful dishonor, not wrongful setoff. The second allegation, that Chase accepted deposits with the intent to benefit only itself is tantamount to averring that Chase had the duty to refuse deposits from Spencer once it decided to set off the General Account. No authority exists which supports such a duty.

■ In summary, to the extent that Spencer's claim for wrongful setoff is based on the alleged lack of a prior demand, I find that Spencer has stated a claim for which relief may be granted. The terms and conditions of both notes indicate that a prior demand was required before the debts became due and payable. Spencer is entitled to recover any damages it may be able to prove resulted from Chase's failure to make a demand.

## B. The Expense Account

Spencer also claims in Count II that Chase improperly set off the funds in the Expense Account. This setoff occurred eight days after the setoff of the General Account. Spencer claims the setoff was

wrongful because Spencer used the account only for "certain reimbursable employee expenses and other costs of doing business that were related to its operations such as rent, utilities, and insurance." This account was designated as the "Spencer Companies, Inc. Expense A/C" on the books of Chase, and according to the complaint, the defendants knew of the limited purpose for which the funds were to be used.

As a general rule, a bank may not set off an account which it knows was created for a special or particular purpose. *In Re Saugus General Hospital, Inc.*, 698 F.2d 42, 46 (1st Cir.1983); *In Re Applied Logic Corp.*, 576 F.2d 952, 958 (2d Cir. 1978). Although the cases do not clearly define a "special account", two characteristics emerge from the cases. Accounts which are devoted to one or only a few purposes are most clearly special deposits not subject to setoff. *In Re Saugus General Hospital*, 698 F.2d at 46 (payroll); *Cassedy v. Johnstown Bank*, 246 A.D. 337, 286 N.Y.S. 202, 205 (1936) (liquidation expenses and distribution); *Noah's Ark Auto Accessories, Inc. v. First National Bank of Rochester*, 64 Misc. 944, 316 N.Y.S.2d 663, 665 (1970) (accounts receivable collection). So too are accounts in which persons other than the depositor have an interest. *Sherberg v. First National Bank*, 122 Colo. 407, 222 P.2d 782, 785 (1950); *Cox v. Metropolitan State Bank*, 138 Colo. 576, 336 P.2d 742, 748 (1959).

In the present case, there is no allegation that anyone besides Spencer had an interest in the balance of the Expense Account. Nor does the fact that Spencer used the funds to pay its operating expenses make the account a special one for purposes of determining the bank's right to set off. Operating expenses include a wide variety of items, such as rent, utilities, taxes and the like. An account like that at issue here stands in distinct contrast to an account which is devoted to the payment of one item alone.[4] Spencer's Expense Ac-

count differed from a general account in name only. The designation as an expense account appears to be merely a matter of convenience for Spencer. Nothing indicates that Spencer's access to the funds was limited in any way or that its use of the funds was restricted to the payment of its operating expenses. *In Re Goodson Steel Corp.*, 488 F.2d 776, 779 (5th Cir. 1974). Nor is there any indication that Chase expressly or implicitly agreed to apply the funds only to the payment of the operating expenses of Spencer. *Cf. Noah's Ark Auto Accessories, Inc. v. First Nat'l Bank of Rochester*, 316 N.Y.S.2d at 665. For these reasons, I find that Spencer has failed to state a claim that the setoff of this account was wrongful.

## COUNT III—CONVERSION COUNT

Count III alleges that Chase's actions in accepting Spencer's deposits solely for Chase's own benefit, wrongfully dishonoring Spencer's checks and setting off the balances in both checking accounts amounted to a conversion of Spencer's property for which Chase is liable. I find this Count is properly dismissed for failure to state a claim for which relief can be granted.

It is a basic principle taught in every second year commercial law class that a deposit of funds made to a general account creates only a debtor-creditor relationship between the bank and the depositor. *Carpenter v. Suffolk Franklin Savings Bank*, 362 Mass. 770, 776, 291 N.E.2d 609 (1973); *Luxonomy Cars, Inc. v. Citibank, N.A.*, 65 A.D.2d 549, 550, 408 N.Y. S.2d 951, 954 (1978). Money deposited in a general account becomes the absolute property of the bank. *Friedman v. First National Bank of Boston*, 344 Mass. 593, 595, 183 N.E.2d 722 (1962); *Miller v. Wells Fargo Bank International Corp.*, 540 F.2d 548 (2d Cir.1976). Chase cannot be liable for conversion because Spencer retained no property to convert. Spencer held merely

---

4. The Expense Account was apparently put to broader use than the General Account. The General Account was used to acquire merchandise and pay salaries in contrast to the broad array of items which could be deemed an operating expense.

a claim against Chase for repayment of the funds deposited.

Spencer concedes the general rule that funds on deposit become the property of the bank. It asserts, however, that the facts of this case take it outside the scope of the usual debtor-creditor relationship. I find no merit in Spencer's assertion.

### COUNT IV—PRIMA FACIE TORT

■ To state a cause of action for prima facie tort, a plaintiff must show that the defendant intentionally inflicted harm without excuse or justification by an act or series of acts which would otherwise be lawful. *Curiano v. Suozzi*, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324, 1327 (1984). A plaintiff must also establish that the defendant's actions were motivated solely by "disinterested malevolence" or a malicious intent to do injury to the plaintiff. *Burns Jackson et al. v. Lindner*, 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459, 468 (1983). It is not enough to allege that defendant intended to injure the plaintiff. *Id.* If any other motive, such as profit or self-interest, is also evident from the complaint, then the plaintiff's claim must fail. *See, e.g., Angrisani v. City of New York*, 639 F.Supp. 1326, 1338 (E.D.N.Y.1986); *Keating v. BBDO International Inc.*, 438 F.Supp. 676, 683 (S.D.N.Y.1977); *Fifty States Mgmt. Corp. v. Niagara Permanent Savings and Loan*, 58 A.D.2d 177, 396 N.Y. S.2d 925, 927 (1977).

■ Spencer alleges that the actions of Chase in wrongfully dishonoring its checks, accepting its deposits with the intent to benefit itself and in seizing the balances of the accounts were undertaken maliciously with the knowledge that Spencer would be forced into bankruptcy and that at least some of the money would have to be returned. From these facts, Spencer theorizes that Chase must have acted solely with the intent to injure Spencer because Chase could not have expected to obtain any benefit from seizing monies it knew it would have to return in an ensuing bankruptcy.

Viewing the complaint in its entirety, I find that Spencer has failed to establish that Chase's actions were motivated solely by disinterested malevolence. Undoubtedly, Chase's attempt to collect a $3.2 million debt was motivated by a healthy financial interest, whatever other incentives may have played a role. Spencer admits that it had reported losses during the two fiscal years preceding Chase's actions. Chase must have had concerns about Spencer's ability to repay its debts in the future. Moreover, Spencer itself recognizes that Chase's actions were not taken solely to injure Spencer. The complaint alleges that Chase accepted deposits with the intent to hold them for its own benefit. This benefit could not be realized until Chase set off the accounts to satisfy the notes. Whatever may be said for Chase's business judgment in setting off the account, it is impossible that Chase acted without an intent to benefit itself.[5]

### COUNT VI—DECEIT

Spencer bases its claim for deceit on two theories. First, Spencer claims that Chase represented that it would provide interim financing while Spencer awaited the infusion of new capital; in reality, Chase intended to withdraw all financial support as soon as practicable. Second, Spencer asserts that Chase failed to disclose its intention to withdraw all financial support in a deliberate attempt to deceive Spencer into believing such support would be forthcoming. Chase has moved to dismiss the claim on the grounds that Spencer has failed to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure, or alternatively, for failure to state a claim for which relief can be granted.

■ To state a cause of action for deceit, a plaintiff must allege that the defendant knowingly misrepresented a material fact for the purpose of inducing the plaintiff to rely on the misrepresentation, and that the plaintiff did in fact rely on it to his detriment. *Barrett Associates, Inc. v. Aronson*, 346 Mass. 150, 152, 190 N.E.2d

---

**5.** Because the complaint fails to state a claim for prima facie tort, there is no reason to decide whether Massachusetts would recognize the tort as a cause of action.

867 (1963). *JoAnn Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214, 217 (1969). A misrepresentation may be in the form of words or it may be implied from the conduct of the defendant. *Robichaud v. Owens–Illinois Glass Co.*, 313 Mass. 583, 585, 48 N.E.2d 672 (1943). Sometimes silence can constitute a misrepresentation where the defendant fails to disclose information that he is bound to reveal to the plaintiff. *Maxwell v. Ratcliffe*, 356 Mass. 560, 562, 254 N.E.2d 250 (1969); Restatement (Second) of Torts 2d § 551 (1977). In addition, a misrepresentation as to present intent is a sufficient basis for liability in an action for deceit. *Channel Master Corporation v. Aluminum Limited Sales*, 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259, 262, 151 N.E.2d 833, 835 (1978); *Feldman v. Witmark*, 254 Mass. 480, 481, 150 N.E. 329 (1926).

■ I find that Spencer's claim for deceit must fail because of the failure of the complaint to allege any actions or words of the defendants which could be characterized as a misrepresentation of a material fact. The only conduct of Chase described with any particularity is that Chase participated in discussions and negotiations with Spencer and its other lenders in which the parties sought to reach agreement on an interim financing deal which would include Chase as a creditor, at least in the short term. Spencer apparently believes that Chase's participation in these negotiations was an implied representation that Chase would provide interim financing. This position is untenable. Chase's participation in negotiations at most indicates only a willingness to entertain the possibility of providing short term financing. By no stretch of the imagination does such participation, without more, constitute an affirmative representation that Chase would in fact continue to finance Spencer's operations until new capital was invested. Spencer has described no other words or conduct indicating that Chase represented to Spencer that it would not withdraw financial support until new capital was invested. The vague allegation that "Chase Bank represented, expressly and by its conduct,

that it would continue to extend credit" is insufficient under Rule 9(b) to state a claim for fraud. *See Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985).

■ Nor can Spencer base its claim for deceit on the failure of Chase to disclose its intention not to continue financing during the interim period once Chase ultimately reached that decision. Liability for nondisclosure lies only where the defendant had a duty to disclose information to the plaintiff. *Morgan Guaranty Trust Co. v. New England Merchants National Bank*, 438 F.Supp. 97, 104 (D.Mass.1977); Restatement (Second) of Torts § 551 (1977). Despite Spencer's assertions to the contrary, no fiduciary relationship existed between Spencer and Chase which gave rise to a duty to disclose. *Aaron Ferer and Sons v. The Chase Manhattan Bank, N.A.*, 731 F.2d 112, 122 (2d Cir.1984). Nor did any duty arise as a result of Chase's participation in the negotiation sessions. Spencer argues that this conduct "reasonably suggested continued participation in the restructuring of Spencer's finances". I have already noted that Chase's participation alone was not a representation that it would continue to finance Spencer's operations on a short term basis. Therefore, contrary to Spencer's assertion, Chase did not have a duty to disclose its intent in order to correct any misleading impressions resulting from its "representation".

In summary, Spencer's complaint does not describe with the requisite specificity any words or conduct which could serve as basis for its claim of deceit. Vague and conclusory allegations that Chase "expressly and by its conduct" misrepresented its true intent to Spencer are insufficient to support the claim. Nor can it be supported on the theory that Chase had a duty to disclose its intention to Spencer. For these reasons, I find that the claim is properly dismissed.

## COUNT VII—BREACH OF GOOD FAITH

Count VII of Spencer's complaint alleges that Chase breached its duty of good faith and fair dealing in the following manner: by dishonoring Spencer's checks wrongful-

ly and in contravention of a longstanding course of dealing with Spencer, by accepting deposits with intent to benefit itself, by setting off the Expense Account, by failing to give notice of the setoffs and an opportunity to pay, by misrepresenting its intentions with respect to continued financing and by refusing to cooperate with Spencer and its lenders in restructuring Spencer's finances.

■■■ There is implied in every contract governed by the Uniform Commercial Code an obligation of good faith and fair dealing. *See* M.G.L. c. 106, § 1–203; N.Y.Uniform Commercial Code § 1–203 (McKinney 1964). This obligation is implicit in the contract for deposit and the loan agreements governing the rights of the parties here.

■■■ Spencer alleges that Chase had a longstanding policy of honoring checks drawn on Spencer's accounts without regard to whether deposits to the accounts had cleared or were deemed collected. Approximately a week before Chase set off the General Account, Chase started to dishonor checks drawn on that account and insisted that no payments would be authorized until six days after each deposit. Spencer claims that this rule was imposed whether or not the deposits were in fact cleared or collected. Spencer further alleges that Chase dishonored checks drawn prior to the time that Spencer was notified of Chase's abrupt change in policy. Spencer asserts that these checks had been issued in reliance on Chase's longstanding policy of allowing Spencer to write checks against uncollected funds. Spencer further asserts that Chase dishonored the checks in an effort to increase the funds available for its intended set off of Spencer's accounts.

These facts, if proven, state a claim for a violation of the implied obligation of good faith. Although it seems to be conceded that Chase had the right to refuse to honor checks drawn on uncollected funds, where the course of dealing indicates that Chase had never asserted the right against Spencer, a jury could find that good faith re-

quired Chase to give notice to Spencer before the rule took effect. Spencer was entitled to rely on Chase's policy until such time as it received notice that the policy was no longer effective. Chase did not have unfettered discretion to abruptly change policies in order to benefit itself at Spencer's expense.

■■■ The complaint also indicates that Chase's demand for payment may not have been made in good faith. Spencer asserts that the letter demanding payment was sent to Spencer's officers at a time when Chase knew that the officers would not be available to receive the letter.[6] The letter was also delivered immediately prior to the deadline set for payment, if not thereafter, ensuring that Spencer would not have an opportunity to respond to the demand before Chase set off the General Account. While Spencer was not entitled to notice of the setoff, Chase was required to exercise good faith in performing its contractual obligation to make a demand. If it deliberately sent the demand letter in a manner calculated to disadvantage Spencer, then a claim for the violation of good faith obligation imposed by the U.C.C. has been stated.

The remaining allegations do not support a claim for breach of good faith. Chase's intent in accepting deposits was irrelevant. The defendant acted properly with respect to the Expense Account. Spencer was not entitled to notice beyond a demand for payment and Chase did not have any duty to participate in the restructuring of Spencer. Finally, Spencer has pointed to no misrepresentation by Chase which could support a claim for a breach of good faith.

## COUNT VIII—INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS

In Count VIII, Spencer seeks recovery for Chase's tortious interference with Spencer's existing and prospective business relationships. Spencer alleges that Chase disrupted the good relationships Spencer had enjoyed with its employees and creditors by wrongfully dishonoring the checks

---

**6.** The officers were in fact at an out of state meeting with representatives of Chase.

and setting off the accounts. In addition, Spencer alleges that by repudiating its representations that it would participate in the restructure of Spencer's finances and by refusing to cooperate, Chase knowingly caused a prospective investor to withdraw its offer of venture capital.

To state a cause of action for tortious interference, a plaintiff must allege that the defendant intentionally and improperly interfered with its existing or prospective contractual or business relationships. Restatement (Second) of Torts §§ 766, 766B (1977). Without an intent to interfere, there can be no liability since a negligent interference is not actionable. Restatement (Second) of Torts § 766B (1977). Applying these principles, Spencer's complaint fails to state a cause of action for interference because it contains no allegation that Chase acted with the intent to interfere with Spencer's existing employee and creditor relations. Nor are the allegations that Chase knew the consequences of its actions sufficient to show intent. Interference which is merely incidental to another purpose and not the intended result of a party's action is not a sufficient basis for liability in tort. *See* Restatement (Second) of Torts § 766B, Comment d (1977). Spencer has not established that Chase was motivated by a desire to interfere apart from its desire to obtain repayment of a $3.2 million debt.

The complaint also fails to state a cause of action for interference with Spencer's prospective contractual or business relationships. Mere refusal to deal does not constitute tortious interference. *Allied International, Inc. v. International Long Shoremen's*, 492 F.Supp. 334, 339 (D.Mass. 1980), *rev'd on other grounds*, 640 F.2d 1368 (1st Cir.1981), *aff'd*, 456 U.S. 212, 102 S.Ct. 1656, 72 L.Ed.2d 21 (1982). Since the complaint does nothing more than indicate that Chase merely decided to withdraw from the prospective deal, this Count too is properly dismissed.

### COUNT IX—93A VIOLATION

In Count IX Spencer claims that the actions of the defendants, Chase Bank and Chase Services, constitute unfair and deceptive acts under M.G.L. c 93A, §§ 2, 11. The defendants have moved for dismissal of this claim on the grounds that the complaint fails to plead with particularity where the alleged actions and transactions complained of occurred. Alternatively, the defendants have requested summary judgment on the grounds that none of the alleged actions constituting the unfair and deceptive acts occurred in Massachusetts.

M.G.L. c. 93A § 11 provides:

No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth.

Because the defendants have the burden of proving that the alleged unfair and deceptive acts did not occur primarily and substantially in Massachusetts, *Burnham v. Mark IV Homes, Inc.*, 387 Mass. 575, 580, 441 N.E.2d 1027 (1982), I find no merit in the defendants' contention that Count IX is subject to dismissal for the plaintiff's failure to plead with specificity where the various acts and transactions occurred. I therefore turn to the motion for summary judgment.

To support their motion, the defendants have submitted the affidavit of Thomas Lewis, the Vice–President and Regional Manager of Chase Bank. Mr. Lewis' affidavit in essence states that none of the actions complained of, including the setoffs of Spencer's accounts and the dishonor of Spencer's checks, among other things, could have occurred in Massachusetts because Chase Services, the only defendants who operated within the Commonwealth, did not have capacity to conduct banking activities related to the administration of the accounts. All activities relating to the administration of Spencer's accounts necessarily occurred at Chase Bank in New York. Chase Services' sole function was to act as marketing agent for the Spencer accounts.

In opposition to the motion, Spencer has presented evidence that shows it dealt al-

most exclusively with Chase Services and that most of these dealings occurred in Massachusetts. Chase Services, on behalf of Chase Bank, negotiated the terms and conditions of the lending arrangements with Spencer. After the arrangements were in place, Chase Services monitored the accounts and communicated to Spencer any actions or changes of policy affecting Spencer and its accounts. The evidence also shows that Services personnel made recommendations to Chase Bank concerning the Spencer accounts. Although many of these recommendations were subject to final approval by Chase Bank in New York, the evidence does suggest that Chase Services made at least some final decisions affecting Spencer's accounts and loans.

In light of Spencer's evidence, I find that Chase has not carried its burden of proving that the actions and transactions did not occur primarily and substantially in Massachusetts. Viewing the evidence most favorably to Spencer, a picture emerges which suggests a pattern of decision-making beginning with Services in Boston and culminating with the Bank's final approval in New York. Where the actions complained of span more than one state, the place of injury may be the deciding factor in determining whether the actions or transactions complained of occurred primarily and substantially in Massachusetts. *Bushkin Associates, Inc. v. Raytheon, Co.*, 393 Mass. 622, 638, 473 N.E.2d 662 (1985), *Building Specialties/Architectural Hardware, Inc. v. Nucor Corp.*, No. 81–0169–F, Slip Op. (D.Mass. Aug. 17, 1987) [Available on WESTLAW, 1987 WL 15779]. In this case, whether or not the actions of the defendants rise to the level of unfair and deceptive acts, Spencer undoubtedly felt the resulting injury within the commonwealth. For this reason, defendants' motion for summary judgment is denied.

Order accordingly.

## ORDER

In accordance with memorandum filed this date, it is ORDERED:

The defendants' motion for dismissal of Counts III, IV, VI, and VIII is granted.

The defendants' motion for dismissal of Counts II and VII is denied.

The defendants' motion for dismissal or summary judgment on Count IX is denied.