**J.D. COURT, INC., a Corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Acting through the Department of Treasury, Internal Revenue Service, Defendants-Appellees.**

No. 82–2425.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1983.

Decided July 5, 1983.

Rehearing and Rehearing En Banc Denied Sept. 21, 1983.

Duane D. Young, Costello, Young & Metnick, Springfield, Ill., for plaintiff-appellant.

Michael J. Roach, Appellate Sec., Tax Div., Dept. of Justice, Washington, D.C., for defendants-appellees.

Before CUMMINGS, Chief Judge, COF-FEY, Circuit Judge, and MORAN, District Judge.*

COFFEY, Circuit Judge.

This appeal involves a determination of the respective priority between a federal tax lien on a taxpayer's accounts receivable and a private individual's security interest in the same accounts receivable. The district court granted summary judgment in favor of the government finding that the federal tax lien was entitled to priority in all of the taxpayer's accounts receivable arising more than 45 days after the Internal Revenue Service first filed notice of its tax lien. We affirm.

I.

On June 20, 1977, the Director of the Illinois Department of Public Aid certified the taxpayer, Eventide Homes, Inc., to participate in the Title XIX Medicaid Program as a skilled and intermediate nursing care facility.[1] Eventide Homes' initial certification for participation in the Medicaid Program was effective from March 1977 through March 1978, and was later extended through 1980. Under the certification agreement between Eventide Homes and the Illinois Department of Public Aid,

Eventide Homes was under no obligation to provide medical and health care services to public aid recipients of the State of Illinois, but if they decided to provide such care, the Department agreed to reimburse Eventide Homes.

On May 10, 1979, Eventide Homes gave a $75,000 promissory note for value to Mervin Beil and executed a security agreement granting Beil a security interest in the taxpayer's "accounts receivable, and all goods, equipment, fixtures or inventory now or hereafter existing" to secure payment of the promissory note. Beil perfected his security interest pursuant to Ill.Rev.Stat. ch. 26, § 9–401(1)(c) by filing a financing statement with the Illinois Secretary of State's office on May 17, 1979. Beil later sold his security interest in Eventide Homes' accounts to the plaintiff J.D. Court. The assignment of that security interest was recorded with the Illinois Secretary of State on December 21, 1979.[2]

During 1979 and 1980, the taxpayer Eventide Homes provided medical and health care services to Illinois public aid recipients entitling Eventide Homes to receive approximately $33,000 from the Illinois Department of Public Aid. Of this amount, $907.38 was for services rendered to Illinois public aid recipients by Eventide Homes prior to December 1, 1979, with the remainder representing amounts due for the services rendered after December 1, 1979.[3]

* The Honorable James B. Moran, District Judge of the Northern District of Illinois, is sitting by designation.

1. Under Title XIX of the Social Security Act, commonly referred to as Medicaid, Congress has authorized federal grants to states for the purpose of enabling each state to furnish medical assistance to eligible persons. Although federally financed, Medicaid programs are administered by the states, subject to the provisions of Title XIX, see 42 U.S.C. § 1396 et seq.

2. The record on appeal does not disclose additional facts surrounding the creation and subsequent assignment of the security interest in Eventide Homes' property.

3. More specifically, the district court gave the following chronological breakdown of the

amounts owed Eventide Homes by the Illinois Department of Public Aid:

| 1979—October | 6 through 24 | $ 42.40 |
| | 6 through 31 | 204.22 |
| November | 1 through 14 | 81.52 |
| | 1 through 30 | 579.24 |
| December | 1 through 11 | 42.18 |
| | 1 through 30 | 643.45 |
| 1980—January | 1 through 31 | 23,468.21 |
| | 8 through 21 | 162.32 |
| | 15 through 31 | 456.29 |
| February | 1 through 14 | 7,192.89 |

There is some discrepancy regarding the exact total amount owed Eventide Homes by the Illinois Department of Public Aid. The district court stated that the amount owed Eventide totaled $30,593, while the parties stipulated that the amount equaled $32,872.72. The $32,-872.72 figure is also arrived at by totalling the court's chronological breakdown of the

Because of Eventide Homes' failure to pay its federal income taxes, the Internal Revenue Service assessed delinquent taxes against Eventide Homes and imposed a federal tax lien on Eventide Homes' property sometime prior to September 1979.[4] On September 17, 1979, the Internal Revenue Service filed in the Kankakee County, Illinois Recorder's Office the first of four notices of tax liens against Eventide Homes' property, in the amount of $3,802.00. The three other notices of tax liens against Eventide Homes were filed in the Kankakee Recorder's Office on the following dates and for the following amounts: (1) October 10, 1979 for $11,084; (2) October 16, 1979 for $10,484; and (3) January 30, 1980 for $43,555.

On January 23, 1980, the Internal Revenue Service levied[5] on the funds then due and owing to Eventide Homes from the Illinois Department of Public Aid for services rendered to public aid recipients. Approximately two weeks later, on February 15, 1980, Eventide Homes (the taxpayer) was placed in receivership. The plaintiff J.D. Court filed this action to enjoin the government from levying on the funds of the Illinois Department of Public Aid owed to Eventide Homes alleging that it is entitled to priority to all of the levied funds by virtue of its position as assignee of the security interest in Eventide Homes' "accounts receivable." The levied funds are presently being held in escrow pending resolution of this lawsuit.

In its summary judgment order, the trial court found that the plaintiff J.D. Court's security interest took priority in the taxpayer's accounts receivable which came into existence within forty-five days of the IRS's first filing of a notice of tax lien. The court further determined that the government had priority in the accounts receivable that came into existence after the forty-five days had expired from the filing of the first tax lien pursuant to 26 U.S.C. § 6323(c). The plaintiff J.D. Court appeals from the decision of the district court.

## II.

■ Since one of the parties in this case is the United States holding a lien for unpaid taxes, federal law governs the priority of the conflicting liens on Eventide Homes' accounts receivable. *United States v. Pioneer American Insurance Co.,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). Specifically, the Federal Tax Lien Act of 1966, 26 U.S.C. §§ 6321–6326 sets forth the rights of private creditors with respect to a federal tax lien.

■ The Tax Lien Act follows the general rule that a "lien first in time is first in right." In general, a federal tax lien arises (i.e., "attaches")[6] "at the time the [tax]

amounts owed. This discrepancy, however, does not affect our resolution of this appeal since it is undisputed that both the government's tax lien and J.D. Court's security interest exceed the amount owed the taxpayer by the Illinois Department of Public Aid.

4. The record does not disclose the date of the assessment of the delinquent taxes against Eventide Homes, Inc.

5. 26 U.S.C. § 6331 states:

"(a) Authority of Secretary or delegate.— If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property ... belonging to such person or on which

there is a lien provided in this chapter for the payment of such tax.

\* \* \* \* \* \*

"(b) Seizure and sale of property.—The term 'levy' as used in this title includes the power of distraint and seizure by any means.... In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible)."

6. A lien or security interest is said to "attach" at the moment the interest comes into existence. Although the Federal Tax Lien Act of 1966 does not specifically use the term "attach," the term "arise" as used in the Act is considered synonymous with "attach." *See* Coogan, *The Effect of the Federal Tax Lien Act of 1966 Upon Security Interests Created Under the Uniform Commercial Code,* 81 Harv.L.Rev.

assessment is made," 26 U.S.C. § 6322, and therefore a tax lien normally takes priority over other liens arising subsequent to assessment of the delinquent tax.[7] Section 6323(a)[8] of the Act creates an exception to § 6322's rule that a federal tax lien generally attaches at the time the delinquent tax is assessed; under § 6323(a), when the "holder of a security interest" also claims an interest in property subject to a federal tax lien, the federal tax lien is deemed to have attached when the IRS files a notice of tax lien, rather than when the delinquent tax was first assessed. Thus, the holder of a security interest in a taxpayer's property will prevail against a government tax lien on the same property if the security interest "attaches" and is perfected before the government files its notice of tax lien, *see* Coogan, *The Effect of the Federal Tax Lien Act of 1966 Upon Security Interests Created Under the Uniform Commercial Code,* 81 Harv.L.Rev. 1369 (1968).

■ Therefore, to determine the priority between a federal tax lien and a security interest in the same property, it is necessary to determine (1) when the federal tax lien "attaches"; and (2) when the state law security interest "attaches." As we have noted above, § 6323(a) provides that a fed-eral tax lien "attaches" in these circumstances when the notice of tax lien is filed in the appropriate place. However, the Act fails to expressly state when the competing state law security interest is deemed to have "attached." In answering this question, courts have long relied on the judicially created "choateness doctrine." Under the "choateness doctrine," where a security interest arising under state law (such as the plaintiff's) comes into conflict with a federal tax lien, the state law security interest "attaches" only when it becomes "choate." A state law security interest is deemed to be "choate" when all three of the following elements are satisfied: "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *Pioneer American Insurance Co.,* 374 U.S. at 89, 83 S.Ct. at 1655, quoting *United States v. New Britain,* 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520; W. Plumb, Federal Tax Liens 149–50 (3d Ed.1972 and Supp.1974). If this three-part "choateness" test is satisfied at the time the IRS files its notice of tax lien, *or within 45 days thereafter,* the state law security interest takes priority over the competing tax lien. 26 U.S.C. § 6323(c).[9]

1369, 1373 (1968). In the lexicon of the UCC, a security interest "attaches" when the security interest becomes enforceable against the debtor and third parties. *See* White & Summer, The Law Under the Uniform Commercial Code 901–02 (1980).

**7.** 26 U.S.C. § 6322 provides:
"Period of lien
"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."

**8.** 26 U.S.C. § 6323(a) states:
"Validity and priority against certain persons
"(a) Purchases, holders of security interests, mechanic's lienors, and judgment lien creditors.—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of sub-section (f) has been filed by the Secretary or his delegate."

**9.** 26 U.S.C. § 6323(c) recites:
"(c) Protection for certain commercial transactions financing agreements, etc.—
"(1) In general.—To the extent provided in this subsection, even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which—
"(A) is in qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting—
"(i) a commercial transaction financing agreement,
"(ii) a real property construction or improvement financing agreement, or
"(iii) an obligatory disbursement agreement, and
"(B) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.
"(2) Commercial transactions financing agreement.—For purposes of this subsection—

In the instant case, the district court applied the foregoing rules, including the "choateness doctrine," to determine the respective rights of the plaintiff and the United States in Eventide Homes' accounts receivable. The court found that the plaintiff's security interest in the Eventide Homes' accounts receivable did not satisfy the three-part "choateness" test until the property subject to the security interest (i.e., the accounts receivable) actually came into existence—namely, at the moment in time when the Illinois Department of Public Aid became indebted to Eventide Homes for the provision of health and medical services to Illinois public aid recipients. Applying this reasoning, the district court determined that the plaintiff's security interest was "choate" only with regard to the $907.38 of accounts receivable coming into existence within 45 days of the government's filing its first notice of tax lien and thus was only entitled to priority over the competing tax lien to that extent. The court further found that the IRS's tax liens were entitled to priority with regard to any accounts receivable coming into existence thereafter, totalling $31,965.34, since the plaintiff's security interest in those accounts receivable did not become "choate" until more than 45 days after the government filed notice of its tax liens.

In this appeal, the plaintiff first challenges the district court's reliance on the "choateness doctrine." The plaintiff states that the "choateness doctrine" was developed by the federal courts prior to enactment of the Tax Lien Act of 1966 and that the "choateness doctrine" is solely a tax lien concept not embodied in the Uniform Commercial Code. Since the Tax Lien Act was intended to "conform the lien provisions of the internal revenue laws to concepts developed in [the] Uniform Commercial Code," H.R.Rep. No. 1884, 89th Cong., 2d Sess., 35 (1966), the plaintiff concludes that the "choateness doctrine" was abrogated by the Tax Lien Act of 1966.

■ We disagree with the plaintiff's contention that the Tax Lien Act of 1966 abrogated the "choateness doctrine" since this court, as recently as 1979, recognized the continued viability of the "choateness doctrine" under the Tax Lien Act of 1966. In *Sgro v. United States,* 609 F.2d 1259 (7th Cir.1979) this court held that a government tax lien took priority over a state law security interest in a taxpayer's accounts receivable, and discussed the "choateness doctrine" as follows:

> "Notwithstanding the attachment of a tax lien upon assessment, [§ 6323(a)] provides that ... holders of security interests, ... will prevail if their interest attaches before the Government files appropriate notice. *Attachment occurs at the moment the interest becomes choate,* which is a question of federal law.... If 'the identity of the lienor, the property subject to the lien, and the amount of the lien are established' before the Government files notice, those falling within the statutory class will prevail over a prior tax lien."

> \*   \*   \*   \*   \*   \*

> "[A] common way to secure a line of credit is to use one's accounts receivable as collateral. Such a loan may be secured by the outstanding balances in the debtor's accounts receivable at the time the

(A) Definition.—The term 'commercial transactions financing agreement' means an agreement (entered into by a person in the course of his trade or business)—

(i) to make loans to the taxpayer to be secured by commercial financing security acquired by the taxpayer in the ordinary course of his trade or business, or

(ii) to purchase commercial financing security (other than inventory) acquired by the taxpayer in the ordinary course of his trade or business;

but such an agreement shall be treated as coming within the term only to the extent that such loan or purchase is made before the 46th day after the date of tax lien filing or (if earlier) before the lender or purchaser had actual notice or knowledge of such tax lien filing.

(B) Limitation on qualified property.—The term 'qualified property', when used with respect to a commercial transactions financing agreement, includes only commercial financing security acquired by the taxpayer before the 46th day after the date of tax lien filing."

loan is made and by further balances as they become due.... Since a subsequently arising balance is not in existence at the time the loan is made, *the resulting lien remains inchoate until the underlying debt becomes due....* [T]he resulting lien remains unprotected by [§ 6323(a)] until it becomes choate and *therefore would be subject to a tax lien filed in the interim."*

*Id.* at 1261 (emphasis added) (citations omitted). Similarly, in an earlier case, this court stated:

"[B]efore determining that a state lien has priority over a federal tax lien under the first in time, first in right rule of § 6323, two questions must be answered in the affirmative: whether a valid lien existed under state law when the federal lien was recorded; *and, if so, whether that lien is 'choate' under federal law."*

*Asher v. United States,* 570 F.2d 682, 683 (7th Cir.1978) (emphasis added). The *Sgro* and *Asher* cases clearly establish that, in determining priority between state law liens and federal tax liens under the Tax Lien Act of 1966, the "choateness doctrine" is recognized in this circuit as a valid legal principle, not abrogated by the Tax Lien Act.[10]

Our conclusion that the "choateness doctrine" has continued validity under the Tax Lien Act is buttressed by the Supreme Court's opinion in *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). In *Kimbell Foods,* the Court held that the "choateness doctrine" did not apply in determining priority between the government's *contractual* liens

arising from federal loan programs and private liens. Although the holding of *Kimbell Foods* does not directly affect our resolution of this case, the Court emphasized the critical distinction between a *contractual* lien arising from a government loan program and a government *tax* lien:

"That collection of taxes is vital to the functioning, indeed existence, of government cannot be denied.... Congress recognized as much over 100 years ago when it authorized creation of federal tax liens.... *The importance of securing adequate revenues to discharge national obligations justifies the extraordinary priority accorded federal tax liens through the choateness and first-in-time doctrines."*

*Id.* at 734, 99 S.Ct. at 1461 (emphasis added) (citations omitted).

We conclude that the "choateness doctrine" is a valid legal principle in determining the priority between the government's tax lien in Eventide Homes' accounts receivable and the plaintiff's security interest in the same accounts receivable. Having reached this conclusion, we consider only briefly the plaintiff's additional arguments. The plaintiff argues that its security interest in Eventide Homes' accounts receivable was in fact "choate" prior to September 17, 1979 when the government filed its first notice of tax lien. However, as we indicated in *Sgro,* a security interest in accounts receivable does not become "choate" until the accounts receivable actually come into existence, that is, at the time the services giving rise to the accounts receivable are performed. 609

10. The plaintiff argues that *Sgro* is no longer good law since the court in *Sgro* relied upon *Texas Oil and Gas Corp. v. United States,* 466 F.2d 1040 (5th Cir.1972), *cert. denied,* 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973), a case which the plaintiff contends has been subsequently overruled by the Fifth Circuit. We disagree since it is unclear whether the Fifth Circuit has in fact overruled the *Texas Oil* case and abandoned the "choateness" doctrine. In *Aetna Ins. Co. v. Texas Thermal Industries, Inc.,* 591 F.2d 1035, 1038 (5th Cir.1979), the Fifth Circuit stated: "We therefore conclude, and hold, that whatever role the 'choateness' rule of federal common law may play in other

contexts, it has been supplanted by the provisions of § 6323 with respect to tax lien priority questions as to which that statute provides an unambiguous federal law answer." (footnote omitted). However, the *Aetna Ins.* court did not even cite the *Texas Oil* case, much less expressly overrule it. Moreover, a year after *Aetna Ins.* was decided, the Fifth Circuit in *Rice Inv. Co. v. United States,* 625 F.2d 565 (5th Cir.1980) extensively relied on *Texas Oil,* referring to it as an example of "federal standards of choateness employed as a tool for statutory interpretation of § 6323 where the collateral was an account receivable." *Id.* at 571 n. 19.

F.2d at 1261. Thus, the district court correctly determined that the plaintiff had priority only to those accounts receivable arising prior to the government's filing of its notice of tax lien, or within 45 days thereafter. Section 6323(c)(2).[11]

In conclusion, we hold that the district court correctly applied the "choateness doctrine" in determining the respective rights of the parties under the Tax Lien Act of 1966. The judgment of the district court is AFFIRMED.

11. The plaintiff argues in the alternative that it had a security interest in the taxpayer's "contract rights" to payment from the Department of Public Aid, which was choate when the security agreement was first entered into between Eventide Homes and Beil (the assignor of the security interest to plaintiff). We reject this argument since, under the terms of the taxpayer's certification to participate in the Medicaid Program, the taxpayer had no "contract rights" whatsoever—the taxpayer was not obligated to provide services for public aid recipients and was entitled to receive reimbursement if and when it chose to perform such services. Therefore, the taxpayer had no "contract right" to receive reimbursement from the Department of Public Aid until such time as services were actually performed for public aid recipients.