**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**CENTRAL BANK OF DENVER,
Defendant–Appellee.**

No. 84–1050.

United States Court of Appeals,
Tenth Circuit.

March 31, 1988.

Murray S. Horwitz, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Washington, D.C., Michael L. Paup, and Carleton D. Powell, Tax Div., Dept. of Justice, Washington, D.C., were also on the brief, Robert N.

Miller, U.S. Atty., Denver, Colo., of counsel), for plaintiff-appellant.

Alice L. Parker, Denver, Colo. (Cheryl A. Crandall, Denver, Colo., was also on the brief), for defendant-appellee.

Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and BRETT, District Judge *.

HOLLOWAY, Chief Judge.

The plaintiff-appellant, the United States of America, appeals from the district court's memorandum opinion and judgment holding that the appellee, the Central Bank of Denver, properly refused to honor an Internal Revenue Service, levy served upon the bank because it had a perfected security interest in the delinquent taxpayer's bank account. The appellant (the "Government") filed a timely appeal. We reverse.

I

*A. The factual background*

On March 2, 1979, Mile–Hi Auto Interiors, Inc. ("taxpayer") executed a promissory note to the appellee, Central Bank of Denver ("Central"). The note was secured by a security agreement of the same date. Central filed a financing statement on March 6, 1979 with the Office of the Secretary of the State of Colorado. The statement identified Central as the secured party and the taxpayer as the debtor and covered "all accounts and contract rights now due or hereafter to become due."

Subsequently the Secretary of the Treasury made assessments for unpaid federal income withholding and Federal Insurance Contributions Act taxes, including penalties and interest, against the taxpayer. The amount assessed is $8,878.96 plus accrued but unassessed interest, penalties and statutory additions. The dates of assessment,

notice and demand were stated in a stipulation as June 11, September 17, September 24 and November 19, 1979. R. 27. On August 24 and 27, 1979, the Government filed notices of federal tax liens against the taxpayer with the Secretary of State of Colorado and the Clerk and Recorder, City and County of Denver, Colorado for the tax assessment of June 11, 1979, showing a $7,841.26 total. R. 27.

The IRS served via mail a notice of an administrative levy (Treasury Form 668–A) upon Central on October 10, 1979 pursuant to § 6331(a).[1] The notice stated the taxpayer's outstanding tax liabilities and requested that Central remit to the IRS any funds belonging to the taxpayer. Central received the notice on October 15, 1979.

When the notice was received by Central, the balance in the taxpayer's account was $3,526.91. The stipulation stated that "the balance consisted of funds deposited to said account in payment for certain receivables owed to taxpayer by various customers, and as such represented proceeds of accounts receivable." R. 29. At this time the taxpayer was also in default on its note to Central. The note signed by the taxpayer placed no restrictions on its right to withdraw funds from the bank account. R. 31, 42. This access to the account was used by the taxpayer to make deposits and withdrawals even after it was in default to Central. R. 42, 43.

On October 17 Central made a setoff of $3,521.90 in the taxpayer's bank account, applied it to the amount taxpayer owed the bank ($3,826.74), and debited the account for a $5 processing fee. Central then responded to the notice of levy by stating that "no funds were available" to remit to the IRS. The Government made a final demand on Central for the funds in the

---

* Honorable Thomas R. Brett, United States District Judge for the Northern District of Oklahoma, sitting by designation.

1. Section 6331(a) reads in pertinent part:
 If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.
 The term "Secretary" means the Secretary of the Treasury or his delegate. 26 U.S.C. § 7701(a)(11)(B).

taxpayer's account on December 7, 1979, but the bank refused to honor the levy.

### B. The procedural history

The Government filed this suit against Central in January 1983. It claimed that Central had in its possession the day after the notice of levy was served, property or rights to property belonging to the delinquent taxpayer amounting to at least $3,526.91; that Central had refused to surrender the funds and was liable under 26 U.S.C. § 6332;[2] and judgment for $3,526.91 and interest was sought. Cross-motions for summary judgment were filed.

The district court denied the Government's motion, but granted Central a summary judgment. In so holding, the court concluded that Central's perfected security interest in the taxpayer's account had priority over the federal tax lien and that Central's setoff of the account's funds against the taxpayer's outstanding debt to the bank was not wrongful. R. 75. Additionally, the court found that Central's claim and defense—that the levy was wrongful pursuant to 26 U.S.C. § 7426—was time barred by the terms of § 7426 as it was raised more than nine months from the date of levy. The Government appealed.

The Government contends that the district court erred in not holding Central liable as the lien was properly asserted in accordance with 26 U.S.C. § 6331 and that Central fails to demonstrate any of the defenses which excuse a failure to comply with the federal demand, i.e., that Central was not in possession of the property or rights to property belonging to the delinquent taxpayer or that the property was subject to a prior *judicial* attachment or

execution. *See* 26 U.S.C. § 6332. The latter defense was not raised in the district court. Since state law determines the nature of the property which is subject to federal tax liens, Central contends that the taxpayer's account does not constitute property under Colorado law and, therefore, is not subject to a lien under §§ 6321 and 6331. The Government challenges this contention.

The Government urges that, derived from the concomitant principle that federal law determines the consequences ensuing from a tax levy, Central's security interest does not have priority over the federal lien, nor does the security interest or setoff right excuse Central's failure to honor the tax levy. Even if the account is property or the right to property, Central argues that it is entitled to the account funds. This claim is based on Central's allegedly superior security interest and, alternatively, on Central's exercise of its right to setoff as provided by Colorado law. Central also contends that the Government executed a wrongful levy which Central can raise as a defense, not a claim in an action, which is not time barred under § 7426, despite the delay exceeding nine months from the date of the notice of the levy.

### II

### State law and the nature of property

We must initially determine whether the taxpayer's account constituted property or the right to property as state law determines the nature of property subject to federal tax liens. *See United States v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983); *United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057,

---

**2.** Section 6332(a) reads:
 Except as otherwise provided in subsection (b), any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

Central's liability is for a sum equal to the value of the property or rights not surrendered and not to exceed the amount of taxes for the collection of which such levy has been made. Section 6332(c)(1). The Government has waived collection of additional liability arising when a person required to surrender property or rights to property fails or refuses to make such a surrender and is therefore liable for a penalty equal to 50 percent of the amount recoverable as taxes. Section 6332(c)(2).

2 L.Ed.2d 1135 (1958); *United States v. Wingfield*, 822 F.2d 1466, 1472, 1473 (10th Cir.1987). Here this determination is of concern as Central argues as its first defense that the taxpayers' account did not constitute property under Colorado law in light of its perfected security interest and the taxpayer's indebtedness exceeding the account balance. The district court reached its holding without an explicit determination on this question. We feel we should decide this question first. We think that here Central's only defense would be that the account in these circumstances did not constitute "property or rights to property" within the meaning of § 6331(a). *United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 2923, 86 L.Ed.2d 565 (1985). Then, once a court rules that property or the rights to it exist under state law, the consequences are governed by federal law. *Aquilino v. United States*, 363 U.S. 509, 513, 514, 80 S.Ct. 1277, 1280, 1281, 4 L.Ed.2d 1365 (1960); *Wingfield*, 822 F.2d at 1473; *United States v. Hunt*, 513 F.2d 129, 133 (10th Cir.1975). When a taxpayer neglects or refuses to pay any tax after demand, the amount "shall be a lien in favor of the United States upon all property and rights to property" belonging to the person liable to pay the tax. 26 U.S.C. § 6321.

Central argues that under Colorado law the ownership of the money in the bank account was transferred to Central when the taxpayer deposited the funds. Consequently the IRS through its levy could not reach or succeed to the taxpayer's property or the right to property. Central relies upon the general principle, established in Colorado law, that "the simple deposit of money on account is a general deposit,[3] and transfers the ownership of the money to the bank." *Boettcher v. Colorado Nation-*

al Bank, 15 Colo. 16, 24 P. 582, 584 (1890), overruled on other grounds, 138 Colo. 576, 336 P.2d 742, 749 (1959). The bank and its customer enter into a debtor and creditor relationship which is generally recognized at common law. *Id.* 24 P. at 584; *accord, Rivera v. Central Bank and Trust Co.*, 155 Colo. 383, 395 P.2d 11, 13 (1964); *Cox v. Metropolitan State Bank Inc.*, 138 Colo. 576, 336 P.2d 742, 747 (1959); *American National Bank of Denver v. First National Bank of Denver*, 130 Colo. 557, 277 P.2d 951, 954 (1954), *Sherberg v. First National Bank of Englewood*, 122 Colo. 407, 222 P.2d 782, 785 (1950). As established by the Colorado Supreme Court in *Boettcher*, "Thereafter the depositor has only a debt owing him from the bank—*a chose in action,*—not any specific money, or a right to any specific money." *Boettcher*, 24 P. at 584 (emphasis added). Central argues the ownership element while ignoring the importance of the chose in action which is a necessary element of the relationship.

The chose in action or claim against the bank retained by the depositor is a form of property recognized under Colorado law. In determining the scope of the power enjoyed by one possessing a chose in action, the Colorado Supreme Court did not stray from that view, long established at common law. The opinion in *In Re Hamilton's Estate*, 113 Colo. 141, 154 P.2d 1008 (1945) explains:

> [A] chose in action is a property right, often described as intangible property. Incidents of ownership with regards to a chose in action are rights or privileges to deal with it as one may deal with his property ... The value of the chose in action consists of the sum total of the incidents of ownership.

*Id.* at 1011; *accord Anderson National Bank v. Luckett*, 321 U.S. 233, 248, 64

---

**3.** The parties do not dispute the fact that the account at issue was a general deposit, rather than a special deposit account. *Boettcher v. Colorado National Bank*, 15 Colo. 16, 24 P. 582, 584 (1890); *Isenhart v. Monty*, 161 Colo. 589, 423 P.2d 836, 838 (1967); *Sherberg v. First National Bank of Englewood*, 122 Colo. 407, 222 P.2d 782, 785 (1950). Under the Colorado law stated in *Boettcher* and *Sherberg* and generally accepted banking law, a special account or de-

posit arises from an express agreement or specific circumstances and the bank is *precluded* from exercising any right of setoff against this kind of account. *Sherberg*, 222 P.2d at 785 (quoting 9 C.J.S., Banks and Banking, § 296 at 615); *accord Rocky Mountain Machinery Co. v. First National Bank of Trinidad*, 767 F.2d 722, 724–725 (10th Cir.1985); *Glenn Justice Mortgage Co., Inc. v. First National Bank of Ft. Collins*, 592 F.2d 567, 569–70 (10th Cir.1979).

S.Ct. 599, 607, 88 L.Ed. 692 (1944) (bank account is chose in action of the depositor against the bank and property subject to state control); 10 Am.Jur.2d Banks §§ 338, 339 at 300, 301 (1963).

■ Here there is no showing of any alteration of the right of constructive possession to the chose in action, which constitutes the taxpayer's property and which is subject to a federal tax lien. *See Wingfield,* 822 F.2d at 1475 (absent a final judgment divesting taxpayer of the interest in the property on which the IRS has filed notice of a tax lien, the taxpayer's interest in the seized property is sufficient for a federal tax lien to attach). The taxpayer exercised the rights and privileges of ownership with respect to the account. Through its control of the account, the taxpayer deposited and withdrew money without prohibition from Central, even after the taxpayer's loan was in default. *See National Bank of Commerce,* 472 U.S. at 724–725, 105 S.Ct. at 2926–2927 (where state law provides for taxpayer's right to withdraw from account it suffices as a right to property under §§ 6331 and 6332). The bank's interest in the account is not manifested by an assignment or pledge from the customer-taxpayer, which at common-law would transfer title or control of the account to the bank. *See Peoples National Bank of Washington v. United States,* 777 F.2d 459, 461–462 (9th Cir. 1985). Absent an affirmative act of the customer to assign and transfer to Central its right in the chose in action, such as by an indispensable instrument like a passbook necessary to control an account, *id.,* there is no basis for holding under Colorado law that a depositor loses all right to property in the bank account.

We hold that the taxpayer, Mile–Hi Auto Interiors, Inc., retained a property interest in the nature of a chose in action under Colorado law with respect to the account at the time that Central received notice of the administrative levy. We also hold that as property the taxpayer's interest in the account was subject to the federal tax levy.

**III**

*Central's claims based on its perfected security interest and its right to a setoff*

*A. Controlling federal law*

■ In a levy proceeding the IRS acquires whatever rights the taxpayer possessed. *National Bank of Commerce,* 472 U.S. at 725, 105 S.Ct. at 2927; *United States v. Rodgers,* 461 U.S. 677, 690, 691, n. 16, 103 S.Ct. 2132, 2140, 2141, n. 16, 76 L.Ed.2d 236 (1983). There remain the claims of Central that its perfected security interest under Colorado law [4] and its right to a setoff precluded the IRS from obtaining rights in the account.

Central cannot claim the defenses allowed under § 6332 for one refusing to comply with an administrative tax levy. The first defense—that Central did not possess property or rights to property of the delinquent taxpayer—has been rejected in Part II. The second defense, a judicial attachment or execution in favor of Central prior to the notice of the tax levy, has not been urged by Central.

The Government argues that because Central fails to raise defenses specifically arising from the terms of § 6332(a), it can raise no other issue including those of a priority based on a perfected security interest or the right to a setoff. According to the Government, these issues can only be raised where the property is the subject of an action brought under 26 U.S.C. § 7426.

■ We do not read the statutes or the decisions so narrowly. It is true that parties claiming an interest in property seized by a levy may recover in civil actions which they "may bring" against the United States. § 7426(a)(1). These are not the only proceedings, however, in which the issues can be raised. In fact, in the Court's decision in *National Bank of Commerce,* 472 U.S. at 729, 731, 105 S.Ct. at 2929, 2930, the Court referred specifically

---

**4.** 26 U.S.C. § 6323 provides for specific property interests for which a federal tax levy is invalid, including certain security interests. Here we address whether the security interest claimed by Central falls within the provisions of § 6323 which exempt property from IRS liens.

to postseizure administrative or judicial hearings. We feel that the instant proceeding to establish liability under 26 U.S.C. § 6332(c)(1) is such a proceeding. We are not saying that the bank was entitled to refuse to honor the administrative levy, and we recognize the importance of the relief by this procedure which has been clearly provided for the Government. *Id.* at 733, 105 S.Ct. at 2931. Nevertheless, when a suit under § 6332(c)(1) is brought by the Government, this does not mean that the third party may not raise the issue of a perfected security interest or a claim of a right to setoff as here. The district court and this court do have jurisdiction to consider those issues nevertheless.

■ Likewise, within the parameters of the postseizure administrative remedies, we feel that such issues could be raised by the bank under 26 U.S.C. § 6343. *See National Bank of Commerce,* 472 U.S. at 728, 105 S.Ct. at 2928 (referring to § 6343(b) as "an effective and inexpensive administrative remedy" for the return of the property); 13 Mertens Law of Federal Income Taxation § 54A.54 at 139, 140 (1942–1987). Section 6343 provides means for release of levy and return of property wrongfully levied upon, and we are satisfied that in the administrative proceedings, there would be jurisdiction to consider the assertion of issues such as a perfected security interest or the right to a setoff, which could then serve as the basis for a return of property. Accordingly we reject

the narrow construction urged by the Government on the jurisdiction of the courts and the proceedings in which these issues may be raised.[5]

Thus, we turn to the merits of Central's assertion of a perfected security interest and of its right of setoff. We must judge the merits of these claims by federal law. "The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question. Hence, although a state court's classification of a lien as specific and perfected is entitled to some weight, it is subject to reexamination by this Court." *United States v. Security Trust & Savings Bank, Executor,* 340 U.S. 47, 49–50, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950).

■ Under the Federal Tax Lien Act of 1966, 26 U.S.C. §§ 6321–6326, the general rule is that a "lien first in time is first in right." *United States v. City of New Britain, Connecticut,* 347 U.S. 81, 85–86, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). In general, a federal tax lien attaches at the time the tax assessment is made. 26 U.S.C. § 6322.[6] Such a lien takes priority over liens attaching subsequent to the assessment of the delinquent tax. *J.D. Court, Inc. v. United States,* 712 F.2d 258, 260–261 (7th Cir.1983) *cert. denied,* 466 U.S. 927, 104 S.Ct. 1708, 80 L.Ed.2d 182 (1984); *Marteney v. United States,* 245 F.2d 135, 137 (10th Cir.1957). Under § 6323(a) there is an exception to the general rule for security interests. When the holder of a

---

**5.** Thus in such a suit as this under § 6332(c)(1), the court would determine the defendant's liability for having refused to honor the administrative levy and any interest, penalty and costs due because the defendant could not assert either of the limited defenses to an administrative levy—that defendant possessed no property or rights to property of the delinquent taxpayer or that there was a judicial attachment or execution in favor of defendant prior to notice of the levy. Nevertheless, without the necessity of a multiplicity of separate actions, we feel the defendant in this suit is entitled to assert its claims that it has a perfected security interest or a right of setoff as a basis for relief that it could obtain in a separate suit on such grounds, or administratively as noted above.

The Government argues that Central's claims of a perfected security interest and of a right of setoff are time-barred by § 7426. Since we con-

clude below that Central had not exercised a choate right or a timely setoff against the taxpayer's account in any event, we need not address this issue.

**6.** 26 U.S.C. § 6322 provides:

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."

The term "arise" is considered synonymous with the term "attach." *See J.D. Court, Inc. v. United States,* 712 F.2d 258, 260–61 n. 6 (7th Cir.1983); *Marteney v. United States,* 245 F.2d 135, 137 (10th Cir.1957).

security interest also claims an interest in the property subject to a federal tax lien, the federal lien is deemed to have attached when the IRS files a notice of the tax lien with the proper authority, rather than when the delinquent tax was first assessed. *J.D. Court,* 712 F.2d at 261.

■ A third party's claim of a security interest does not change the federal law with regard to attachment and choateness.

Notwithstanding the attachment of a tax lien upon assessment, [§ 6323(a)] provides that … holders of security interests, … will prevail if their interest attaches before the Government files appropriate notice. *Attachment occurs at the moment the interest becomes choate,* which is a question of federal law … (emphasis in original).

*J.D. Court, Inc. v. United States,* 712 F.2d at 262 (quoting *Sgro v. United States,* 609 F.2d 1259, 1261 (7th Cir.1979)); *see also United States v. Rotherham,* 836 F.2d 359, 362 (7th Cir.1988). The priority of a lien created by state law depends upon the time it attached to the property in question and became choate. *United States v. Pioneer American Insurance Co.,* 374 U.S. 84, 88, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963); *New Britain,* 347 U.S. at 85–86, 74 S.Ct. at 370. While the theory of relation back to the date of attachment, when the financing statement was filed, is valid as concerns priority between private creditors under state law, it is not effective for federal tax purposes. *United States v. Security,* 340 U.S. at 50, 71 S.Ct. at 113; *Wingfield,* 822 F.2d at 1475; *United States v. Jenison,* 484 F.Supp. 747, 755 n. 12 (D.R.I.1980).

■ Only choate state-created liens take priority over later federal tax liens. *Pioneer,* 374 U.S. at 88, 83 S.Ct. at 1655 (citing *United States v. New Britain,* 347 U.S. at 86, 74 S.Ct. at 371; *Crest Finance Co. v. United States,* 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed.2d 342 (1961)). Under federal law, liens are "perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *Pioneer,* 374 U.S. at 89, 83 S.Ct. at 1655.

*B. Security interest*

Under 26 U.S.C. § 6323,[7] the tax lien imposed by § 6321 is not valid as against certain security interests until notice of the lien is filed in accordance with the statute's requirement. It is undisputed here that the IRS provided notice of lien filed with the State of Colorado in August 1979 and provided notice to the taxpayer in June and September 1979 for almost all of its demand.[8] Central appropriately filed a financing statement perfecting its interest in taxpayer's accounts and contract rights before the tax notice and filing. The question before us is whether Central's claim to entitlement is exempt under the federal provision for perfected security interests, § 6323(h)(1). To prevail against the tax lien, Central must demonstrate that its perfected security interest "has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation," *id.,* and that the lien arising from the security interest was choate at the time the IRS filed the tax lien.

---

**7.** Section 6323 provides in pertinent part:

(a) Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

Subsection (f) directs the Secretary or his delegate to (A) file the notice of the tax lien with the appropriate state office as required by state law; (B) file with the clerk of the federal district court where state law does not designate one

office as required by part (f)(1)(A); and (C) file with the Recorder of Deeds of the District of Columbia when the property subject to the lien is located in the District of Columbia. In this case, the IRS complied with subsection (f)(1)(A).

**8.** The stipulation shows that the final penalty and interest amounts of $53.76 and $55.59 were assessed and noticed on November 19, 1979. R. 27. Since the notices antedating the setoff covered the basic tax liability, the later penalty notices related back to the dates of the earlier notices. *United States v. Bank of Celina,* 721 F.2d 163, 166 (6th Cir.1983).

**1308**

Under the terms of the security agreement between Central and the taxpayer, the parties agreed to establish in favor of Central a security interest under the provisions of the Uniform Commercial Code (UCC). R. at 32. Exhibit B: Security Agreement: Accounts and Contract Rights, at ¶ 3(a). Under paragraph 7(f) of the agreement, the proceeds of the taxpayer's accounts and contract rights are to be deposited into a "Cash Collateral Account" in which the secured party, Central, has the security interest. *Id.* at 7(f). This "Cash Collateral Account" is a special account and not the same bank account which is at issue here.

Central does not have a security interest in the general deposits or accounts of the taxpayer under the terms of the agreement reached by Central and taxpayer and under Colorado UCC law. The agreement clearly states the security interest is in the proceeds of the accounts payable and the contract rights of the taxpayer which are to be placed in a "Cash Collateral Account" in which Central has the security interest. These terms are in accord with Colorado law which *excludes* certain properties or interests as a perfected security interest under the UCC.

The provisions of the UCC in Colorado law in effect at the time specifically excluded from perfection as security interests "a transfer in whole or in part of any of the following: ... any deposit, savings, passbook, or like account maintained with a bank, savings and loan association, credit union, or like organization." Colo.Rev. Stat. § 4–9–104(k). The same section also excluded "any right of setoff." *Id.* at (i). The exclusion of general deposits from perfection under the UCC is not unusual as other states also similarly treat accounts. *E.g., Peoples National Bank of Washington v. United States,* 777 F.2d 459, 461 (9th Cir.1985) (State of Washington UCC does not provide for perfection of security interests in deposit accounts); *see United States v. Third National Bank of Nashville, Tenn.,* 589 F.Supp. 155, 158 n. 3

(M.D.Tenn.1984) (Tennessee UCC does not provide for bank deposits to be subjected to perfected security interests) (dictum).

To the extent that Central was entitled to reach proceeds from accounts or contract rights which were in the general account of the taxpayer, it failed to affirmatively act as required under the state UCC, Colo.Rev. Stat. § 4–9–502.[9] Under this section which addresses the collection rights of a secured party, "If the security agreement secures an indebtedness, the secured party *must* account to the debtor for any surplus, and unless otherwise agreed, the debtor is liable for any deficiency ..." *Id.* at (2) (emphasis added). Prior to the notice and filing of the tax lien, there is no showing that Central had ascertained or traced what portion of the deposit account funds were proceeds from the taxpayer's accounts and contract rights, in which Central's security interest existed, or that Central had accounted to the taxpayer as to its remaining surplus or deficiency on the security interest.

Here Central did not have a security interest in the general deposit account in question, but only in the specified accounts payable and contracts rights, as noted above. *United States v. Bank of Celina,* 721 F.2d at 169. Insofar as Central could have collected from the general account for liability arising from its security interest, the taxpayer's accounts and contract rights or proceeds therefrom, Central did *not* act before the notice and filing of the federal tax lien. More needed to be done before Central's lien could be established as to *all* three requirements of a choate state lien: the identity of the lienor, the property subject to the lien, and the amount of the lien as a sum certain. *Pioneer,* 374 U.S. at 89, 83 S.Ct. at 1655–1656; *J.D. Court,* 712 F.2d at 261. The last two requirements were not shown to have been met at the time when the IRS filed notice of the tax lien with the state offices and when the IRS sent notices to Central of the levy. We hold that Central's security interest was

9. As noted earlier, the stipulation made in this suit states that the account consisted of proceeds of accounts receivables of the taxpayer.

not choate so as to qualify for the preferred status of a choate state-lien as provided by § 6323.

## C. Setoff

Central's alternative basis for defeating the administrative levy, the exercise of the right to a setoff against the taxpayer's account, must be examined for its compliance with the federal requirements for choateness and execution. This issue between the Government and Central turns on whether the latter made a timely exercise of its setoff right so as to defeat the attachment of the IRS lien and notice of the administrative levy.[10]

Under the provisions of the security agreement, Central has the right to apply a setoff against the taxpayer's deposit account, which is the account at issue here, if items credited to the "Cash Collateral Account" are dishonored by the drawee or maker. R. 32, Ex. B at ¶ 11(c). Under Colorado law, the bank has a right of set-off; when it has possession of assets of the depositor-debtor, the bank "may apply these assets to payment of a matured debt." *Sherberg*, 222 P.2d at 785; Colo. Rev.Stat. §§ 4–1–103, 4–4–303. Under the terms of Colorado law, § 4–4–303 provides for a setoff for a payor bank where its customer has a debt to the bank which is mature or in default.[11] The statutory language and official comment for this provision focus upon the effect on the depositor's accounts when the bank has "exercised" the right of setoff. *Id.*, Official Comment at ¶¶ 1 and 2. The Official Comment states that "[i]n the case of setoff the effective time is when the setoff is actually made." *Id.* at ¶ 5; *Baker v. National City Bank of Cleveland*, 511 F.2d 1016, 1018 (6th Cir.1975).

Under the facts of this case, the setoff was not effective *before* the IRS gave notice to the taxpayer and filed the tax lien and the setoff was not effective before Central received notice of the ad-

---

**10.** Central urges that we adopt the holdings of four cases in which the bank exercising the right of setoff, even *after* it received the notice of the tax levy, prevailed over the IRS lien. These cases are not persuasive. Three cases rely upon specific state laws in Pennsylvania, Louisiana, and New York which extinguish the property interest of the taxpayer-depositor so that there exists no property or right to property to which the federal tax lien could attach. *Pittsburgh National Bank v. United States*, 657 F.2d 36 (3rd Cir.1981); *United States v. National Bank of Commerce*, 246 F.Supp. 597 (E.D.La. 1965); *United States v. Bank of the United States*, 5 F.Supp. 942 (S.D.N.Y.1934). The fourth case, *United States v. Bank of Shelby*, 68 F.2d 538 (5th Cir.1934) held that "at law or in equity" the bank "could have defeated" the taxpayer-depositor's demands because of his indebtedness and thus the IRS could not reach nor succeed to any rights in the account. *Id.* at 540. These cases do not comport with the Colorado law before us which establishes a property right in the account in the form of a chose in action which is not extinguished by the bank's unexercised right of setoff. Part II, *supra*.

**11.** The Colorado law provides for the exercise of the setoff by the payor bank against the general account of its customer, the relationship between Central and the taxpayer in this case. Section 4–4–303 provides:

4–4–303. When items subject to notice, stop-order, legal process, or setoff order in which items may be charged or certified. (1) Any knowledge, notice, or stop-order received by, legal process served upon, or setoff exercised by a payor bank, whether or not effective under other rules of law to terminate, suspend, or modify the bank's right or duty to pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend, or modify such right or duty if the knowledge, notice, stop-order, or legal process is received or served and a reasonable time for the bank to act thereon expires or the setoff is exercised after the bank has done any of the following:

(a) Accepted or certified the item;

(b) Paid the item in cash;

(c) Settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule, or agreement;

(d) Completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith or otherwise has evidenced by examination of such indicated account and by action its decision to pay the item; or

(e) Become accountable for the amount of the item under subsection (1)(d) of section 4–4–213 and section 4–4–302 dealing with the payor bank's responsibility for late return of items. (2) Subject to the provisions of subsection (1) of this section, items may be accepted, paid, certified, or charged to the indicated account of its customer in any order convenient to the bank.

ministrative levy against the taxpayer's property on October 15. R. 28. Only after these actions by the IRS did Central act to exercise its right of setoff. Thus Central's acts did not meet the requirements for choateness stated in *Pioneer*, 374 U.S. at 89, 83 S.Ct. at 1655–1656. Whether derived from an agreement with the taxpayer or the common law right to a setoff, until Central affirmatively acted against the taxpayer's account, the bank's right was inchoate or contingent. It is true that the setoff as a state-created right is categorically different from a lien. This, however, does not exempt the setoff from the federal requirement that a creditor's remedy must be in the form of a choate claim and is not effective where it is "contingent upon taking subsequent steps for enforcing it." *Security*, 340 U.S. at 51, 71 S.Ct. at 114; *accord, Pioneer*, 374 U.S. at 90–91, 83 S.Ct. at 1656–1657.

 To meet the federal requirement for choateness, Central should have demonstrated an obvious decision to exercise the setoff right. Generally, three steps are necessary to exercise the setoff right:

1) The decision to exercise the right;

2) some action that accomplishes the setoff; and

3) some record which evidences that the right of setoff has been exercised.

*Baker v. National City Bank of Cleveland*, 511 F.2d at 1018; *accord, In Re Saugus General Hospital, Inc.*, 698 F.2d 42, 47–48 (1st Cir.1983); *Citizens & Peoples National Bank of Pensacola, Florida v. United States*, 570 F.2d 1279, 1283–1284 (5th Cir.1978); *United States v. Citizens & Southern National Bank*, 538 F.2d 1101, 1107 (5th Cir.1976) *cert. denied*, 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977); *see also* 5A *Michie on Banks and Banking*, § 122 at 385 (repl. ed. 1983) (states *Baker* elements as necessary to effect a nonjudicial setoff); Clark, B., *The Law of Bank Deposits, Collections and Credit Cards*, ¶ 11.9 at 11–28 (rev. ed. 1981) (bank's "[m]ere intention is not enough" to perfect a setoff; an affirmative act in accordance with *Baker* is required).

The requisites stated in the *Baker, Peoples National*, and *Citizens and Southern* decisions are congruous with the underlying state UCC requirements. *See Baker*, 511 F.2d at 1018; *Peoples National*, 570 F.2d at 1281–1284; *Citizens and Southern*, 538 F.2d at 1107; *but cf. Pittsburgh National Bank v. United States*, 657 F.2d 36, 39 (3rd Cir.1981) (rejects UCC § 4–303 as basis requiring affirmative action by bank with setoff right where state decisions hold that as soon as a debt owed to a bank by a depositor matures, the bank's right of setoff extinguishes the depositor's rights in the account), and *United States v. Intermountain Region Concrete Co., Inc.*, 636 F.Supp. 280, 285 (D.Utah 1986).

Central failed to demonstrate "some overt act to carry out its intent to setoff" prior to the notice to Central of the administrative levy. *Baker*, 511 F.2d at 1017, 1018 (citing *Studley v. Boylston Bank of Boston*, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913) for requirement of an affirmative act, e.g., "making book entries"). Under the controlling federal law requirement for a choate legally cognizable right, as well as under Colorado law, Central's right of setoff was not exercised in a timely and certain manner so as to defeat the IRS administrative levy. Until the bank exercised the right of setoff, funds in the general deposit account belonged to the depositor and were subject to the federal tax levy. *United States v. Sterling National Bank & Trust Co. of New York*, 494 F.2d 919, 922 (2d Cir.1974). Absent some discrete act by Central to proscribe the taxpayer's control or constructive possession of the account, the Government could attach the account and "step into the shoes of the taxpayer" with regard to the property right to the account. *National Bank of Commerce*, 472 U.S. at 724–725, 105 S.Ct. at 2926–2927.

We hold that Central's unexercised setoff does not have priority over the Government's administrative levy, and conclude that federal priority is necessary to carry out the federal policy and enforcement scheme. *See National Bank of Commerce*, 472 U.S. at 729, 733, 105 S.Ct. at 2929, 2931; *Peoples National Bank of*

*Washington,* 777 F.2d at 462 (stating Ninth Circuit's fourth rejection of argument that an unexercised right of setoff defeats a federal tax lien); *Citizens and Southern National Bank,* 538 F.2d at 1106–1107; *Sterling National Bank & Trust,* 494 F.2d at 922; *see also J.D. Court,* 712 F.2d at 261–263 (Seventh Circuit discussion of choateness doctrine which is unchanged by the Tax Lien Act of 1966 preserving the federal priority because the collection of taxes is vital to the functioning and existence of government); *United States v. First National Bank of Memphis,* 458 F.2d 560, 564 (6th Cir.1972) (Appendix: History of the Federal Tax Lien discusses Congressionally "expressed solicitude for the protection of federal revenue" and related federal statutes). To hold that an inchoate state created right is superior to the federal administrative levy that was exercised would improperly subject the Government to consequences of state law. *National Bank of Commerce,* 472 U.S. at 726, 105 S.Ct. at 2927–2928.

In these circumstances the IRS is not an ordinary creditor subject to the consequences of state law, but a superior creditor with federally defined rights and procedures. *Id.* at 727, 105 S.Ct. at 2928. The Government complied with the federal statutes. In this instance where Central had inchoate claims—the security interest lien and the setoff right—"it is inconceivable that Congress ... intended to prohibit the Government from levying on that which is plainly accessible to the delinquent taxpayer-depositor." *Id.* at 726, 105 S.Ct. at 2927 (quoting *United States v. First National Bank of Arizona,* 348 F.Supp. 388, 389 (Ariz.1970), *aff'd* 458 F.2d 513 (9th Cir. 1972)).

## IV.

### Conclusion

Accordingly the judgment of the district court is

REVERSED.